AMERICAN EXPRESS COMPANY, Appellant, v. PEOPLES SAVINGS BANK, Appellee.

**BILLS AND NOTES:** Fictitious Payee—Knowledge—Effect. The drawer of a draft who is also the drawee may not question an indorsement when the payee was at all times known by all the parties to be fictitious, such an instrument being legally payable to bearer.

Headnote 1:   8 C. J. p. 339.

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

SEPTEMBER 22, 1925.

ACTION at law, to recover $7,187, the proceeds of four drafts issued by plaintiff, as drawer, and paid by plaintiff as drawee, and alleged to have an unauthorized indorsement thereon,

through which the defendant bank secured its title, prior to presentment and payment. Upon the conclusion of all the testimony, the trial court sustained the motion of the defendant for a directed verdict, and judgment was entered accordingly. Plaintiff appeals.—*Affirmed.*

*Carl F. Jordan* and *Deacon, Sargent & Spangler;* for appellant.

*Stewart Holmes, John Redmond,* and *Johnson, Donnelly & Lynch,* for appellee.

PER CURIAM.—Plaintiff seeks to recover the proceeds of four negotiable drafts issued by it as drawer, and paid by it as drawee, on the theory that the indorsement of the name of the payees was without authority, and that the possession of and title to said drafts by the defendant bank were obtained by and through unauthorized or forged indorsements. It appears that, on or about November 16, 1916, at the instance and request of one M. S. Crozer, the plaintiff express company, by its agent at Cedar Rapids, Iowa, sold and delivered to said Crozer a draft drawn upon the plaintiff at its Chicago office, in the sum of $1,975, payable to the order of "Western Evergreen." It is undisputed that said draft was indorsed by M. S. Crozer, "Western Evergreen Co., M. S. Crozer," and by him deposited to his account in the name of "West Coast Company" at the defendant bank, which thereafter collected the face of said draft through its correspondent the Continental & Commercial National Bank in Chicago. On the same date, the plaintiff issued another draft in the sum of $1,562, at the instance and request of Crozer, which draft was payable to the order of the West Coast Company; and after its indorsement by Crozer, "West Coast Company, Darbee," this draft followed the same commercial channels as the first. On November 17, 1916, a third draft was issued in the same manner in the sum of $2,270, payable to the order of West Coast Company, and on the same day a fourth draft issued, under similar conditions, in the sum of $1,380, payable to the order of Western Evergreen Company. All of

these drafts, after the indorsement by Crozer in the name of the payees, followed the same course of negotiation and payment.

The provocation of this suit was the failure on the part of the plaintiff express company to realize on the checks received by it from the purchaser Crozer, drawn by him on his account in the name of the West Coast Company at the defendant bank. Prior to the issuance of these drafts, Crozer had opened an account at the defendant bank in the name of the West Coast Company, and it was upon this account that all checks received by the plaintiff company in payment of the drafts purchased from it were drawn. It may be further observed that the drafts in question do not constitute an isolated transaction, for the reason that from September 18, 1916, to November 18, 1916, drafts were issued daily by the plaintiff to Crozer, either in his name as payee, or in the name "West Coast Company" or "Western Evergreen Company." All of the drafts so purchased were deposited by Crozer to his account in the name of the West Coast Company at the defendant bank, and were forwarded to its Chicago correspondent, which made collection from the plaintiff company and remitted the proceeds to the defendant bank in Cedar Rapids. The record discloses that some 33 drafts other than the ones in question were purchased from the plaintiff company by Crozer, payable to the Western Evergreen Company or the West Coast Company, and aggregated approximately $45,000. That the names West Coast Company and Western Evergreen were fictitious, and were assumed by Crozer as trade names, there is not the slightest doubt.

Sufficient to state that, at the time that Crozer opened his account at the defendant bank in the name of the West Coast Company, he told the officers of the bank that he was an agent for the express company, and that he did not desire to use either the name of the plaintiff or his own name in conducting his business at the bank. At that time, he carried and displayed to the bank officials several railroad passes issued to him by the plaintiff, which showed on their face that Crozer, by reason of being in the employ of the express company, was entitled to ride free on different designated railroad lines. He stated to the bank that he was an employee, and engaged as the agent of the express company in shipping large quantities of decorative

greens from west coast companies to various and sundry places in the middle west, and that "the American Express Company didn't want to use their name direct, and he didn't want to use his name because it would confuse his business. The reason the American Express Company didn't want to use their name was because they didn't want the general public, especially the other florists, to know that they, as carriers of flowers, were actually engaged in selling flowers." Following this conversation, Crozer opened an account at the defendant bank under the name of West Coast Company, and signed the signature card, "West Coast Company, Darbee." Shortly thereafter, the cashier of the bank telephoned Mr. Moyer, the general agent of the express company in Cedar Rapids, and informed him of the prior conversation with Crozer. The bank cashier testified:

"I called Mr. Moyer over the telephone, and asked him if Mr. Crozer was an agent of the company, and he said he was. I told him that he was carrying an account at our bank under the name of West Coast Company, for the purpose, so he stated, of facilitating shipments from the west coast, and asked if that was as he understood the arrangement. He told me it was."

It is apparent from the record that the general agent knew that Crozer was using a trade name in handling his business at the bank. He was informed of the statements made by Crozer to the bank when the account was opened. Crozer was viewed by the bank as an employee of the express company's, and was so treated by the plaintiff company. He was in fact engaged in the development of the express company business in the middle west; and it is quite significant that, when he assumed the name of West Coast Company in opening his account with the bank, he explained to the bank the reason therefor. Although the clerk or cashier of the express company at Cedar Rapids testified that the drafts in question were intended to be paid to the named payees, and that he did not know that they were payable to the order of fictitious or nonexisting payees, it is shown that Mr. Moyer, the general agent of the company, had knowledge that Crozer was adopting a trade name or names in securing the drafts which were subsequently paid by the defendant bank through the Chicago office of the plaintiff. The trial court was clearly correct in its finding that the plaintiff company knew

the method and manner of Crozer in handling these transactions, and that the company, as a matter of law, had knowledge that, when these numerous drafts were issued, the payees thereof were names used by Crozer for the purpose of conducting the business, and for no other purpose. Furthermore, it knew that Crozer was drawing checks, using the name ''West Coast Company.'' It knew that the numerous drafts were being issued in the name of the West Coast Company as payee, and that Crozer himself was negotiating these drafts and indorsing the same. The information and knowledge possessed by the general agent are chargeable to the plaintiff corporation.

At the conclusion of all the testimony, both parties moved for a directed verdict. The motion of the defendant was sustained, and the plaintiff appeals. As indicated by the above statement of the record, the case was tried below upon the theory that the knowledge of the drawer of the drafts as to the fictitious character of the payee was the controlling point in the case. The case having been tried upon that theory, we shall dispose of it upon the same theory.

All parties concede that, if the drawer knew, at the time the order was drawn, that it was made payable to the order of a fictitious or nonexisting person, it was, under the provisions of Section 9469, Code of 1924, payable to bearer. The knowledge of appellant is too clearly established for controversy. This being true, the court could not have done otherwise than to sustain the defendant's motion for a directed verdict. This point being decisive of the case, we have no occasion to consider or discuss any other matters referred to by counsel.

The judgment of the court below is—*Affirmed.*