## HUMMER v. HENRYETTA STATE BANK et al.

No. 21402. Opinion Filed March 31, 1931.

Charles A. Dickson, for plaintiff in error.

M. B. Cope, for defendants in error.

KORNEGAY, J. This case comes from the district court of Okmulgee county; the Honorable James M. Hays, judge. It is brought here by the plaintiff to review the action of the trial court in refusing to classify his claim as a preferred claim in the liquidation of the Henryetta State Bank.

The facts were agreed on in the court below, but the law arising out of the facts is disputed here, as well as in the court below. The allegations in the petition were to the effect that the plaintiff was the agent of himself and Charles A. Dickson and John A. Whalen to rent the southeast quarter of section 6, township 11 north, range 12 east, situate in Okmulgee county, for agricultural purposes, and that the plaintiff rented the property for the year 1929 to W. J. Charles on the usual terms of one-fourth of all the cotton to be delivered to the gins at Henryetta, and one-third of all other crops, and pursuant to that rental agreement and contract Charles took possession of the property and farmed it during the year 1929. That on August 23, 1929, the plaintiff, living at Tulsa, wrote the tenant, Charles, at Henryetta instructing him to deposit the rentals in the American Exchange Bank of Henryetta, and a copy of that letter is set out with the petition. It appears from the letter that a copy was sent to Charles A. Dickson at Okmulgee, Okla., also.

A further allegation is made that when the tenant began to market the crops, through inadvertence or mistake, he deposited the share of the proceeds belonging to the plaintiff in the Henryetta State Bank instead of the American Exchange Bank of Henryetta, and that the plaintiff knew nothing of this until after the Henryetta State Bank had closed its doors.

A copy of the bank records showing the several deposits is set out along with the petition. It was claimed in the petition that by reason of the fact that the tenant had violated the instructions as to the place of deposit, in law it was no deposit and that the relation of debtor and creditor was not created.

It was further set out that about January 7, 1930, the plaintiff had written a letter to the liquidating agent making proof of a preferred claim for the rents which had been paid in by W. J. Charles in the defendant bank. There is an allegation as to the law arising out of the case contained in the 9th paragraph of the petition, to the effect that the title to the rents in the above named sum never passed to the defendant bank or to the liquidating agent, and never became a deposit as between the plaintiff and the defendants, and the title to the money was vested solely in the plaintiff as agent for himself and his co-owners.

A copy of the letter to the tenant is set out in which his instructions are set out, which are as follows:

"When you begin harvesting the crop. I desire that all tickets be taken to the American Exchange Bank, for cotton sold, and that our proportionate part be deposited in the American Exchange Bank to my credit, and a duplicate deposit slip sent me each time."

The bank records are set out showing the date the deposits were made and the balance on each day, and that all deposits were made by W. J. Charles. The heading of the statement is:

"R. B. F. Hummer, City

"In Account With

"The Henryetta State Bank, Henryetta, Oklahoma."

It shows that on September 18, 1929, there was a deposit of $28.60; on September 19, 1929, there was a deposit of $22.78; on

October 9, 1929, there was a deposit for $27.32; on October 12, 1929, one for $11.90; on October 18, 1929, one for $23.85; on October 25, 1929, one for $11.06; on November 9, 1929, one for $16, and on November 12, 1929, there was a deposit for $17.80.

The plaintiff was bound to know the course of the seasons and the time of the maturity of crops. He was bound to expect during this two months that the tenant should have been harvesting the crop and disposing of it. In the answer it was claimed that the bank knew nothing of the instructions given by the plaintiff to the tenant, and this was agreed to.

We do not think it necessary to decide in this case whether the tenant by making a deposit in the defendant bank was seeking to pay the debt of the tenant to the plaintiff arising from the obligation to pay rent or whether the tenant, having paid the rent in kind and having reduced the crops to money, held the money so received as the agent of the plaintiff, as the result should be the same in either case.

Through the medium of his tenant the plaintiff has deposited money in the bank and has opened an account with the bank for the money so deposited in the regular course of business without the bank's knowing anything about the relations between the plaintiff and the tenant or the reason why the tenant put the money in the bank to the credit of the plaintiff.

In the meantime, in due course of business and after receiving other deposits from other parties, the bank failed. Under those conditions the Bank Commissioner took charge for the purpose of reducing the assets to money and dividing it out among its creditors, of which the plaintiff was one, according to the understanding of the bank. The plaintiff's position, so far as the bank was concerned, was that of a depositor of money, just as the other depositors were.

The doctrine of equity is that equality is equity. In this case, however, the plaintiff desires to displace that doctrine and to engraft on it that in his particular case equality is not equity, that he has a superior equity to the other depositors. The ground of it is that his own agents, or perhaps his own debtor, violated his instructions as to the method of procedure to discharge his rental debt to the plaintiff, and the plaintiff claims that it was a case of an agent disobeying the instructions of the principal. However, the plaintiff seeks to get the benefit of the transaction by claiming that the bank is indebted to him. In other words,

he desires to claim the benefit of the act of his agent in depositing the money in the bank, but does not want to ratify the action of the agent in putting the money in the bank for preservation and return on demand.

A person seeking the benefits of the unauthorized acts of an agent must also take the burden. A long line of decisions of this court so holds. One of the late ones is National Builder's Bureau v. Chickasaw Lumber Co., 130 Okla. 30, 264 Pac. 907. A prior decision is Wherry v. Luckey, 99 Okla. 239, 226 Pac. 588. One before that is First National Bank of Muskogee v. Clark, 93 Okla. 23, 219 Pac. 370. Another is Lee v. Little, 81 Okla. 168, 197 Pac. 449. Another is J. I. Case Threshing Machine Co. v. Lyons & Co., 40 Okla. 356, 138 Pac. 167, and another is United States Fidelity & Guaranty Co. v. Shirk, 20 Okla. 576, 95 Pac. 218.

The lower court in this case denied the preference largely on the inference that the plaintiff must have known during all this period that the tenant was not following his instructions about depositing the money, and drawing the inference therefrom that the plaintiff had acquiesced in and consented to the deposit in the bank. We do not find from these facts that the contention of the plaintiff should be sustained. We think that the bank, in good faith, received the deposit and gave credit for it. We further think that the equities of the other depositors to share in the money pro rata have not been displaced by the facts established in this case so that the plaintiff could get all of his while they are compelled to bear the loss. There is no evidence in this case that anybody connected with the bank knew of the violation of the instructions or participated in any manner in such violations.

The case is therefore affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur.