SHULL, Bank Com'r, et al. v. TOWN OF AVANT.

No. 22517. Opinion Filed April 12, 1932.

Rehearing Denied Oct. 18, 1932.

L. A. Justus, Jr., and M. B. Cope, for plaintiffs in error.

Rowland & Talbott, Chas. E. Bush, A. J. Kriete, and W. D. Calkins, for defendant in error.

ANDREWS, J. This is an appeal from a judgment of the district court of Osage county decreeing that the claim of the defendant in error, the town of Avant, hereinafter referred to as the plaintiff, was a preferred claim against the assets of the Avant State Bank, an insolvent banking corporation in the hands of the plaintiffs in error, the successors in interest of that bank, hereinafter referred to as the defendant.

The record discloses that the Avant State Bank was insolvent and was taken over for liquidation by the State Bank Commissioner on December 27, 1929. L. A. Justus was duly appointed and qualified as its liquidating agent, and notice was given to creditors to file their claims. The plaintiff filed a claim in the sum of $7,976.20, and that claim was allowed as a general claim against the assets of the bank. The assets were sufficient to pay only 25 per cent. of the amount of the general claims, and that percentage of the claim of the plaintiff was tendered to it and refused. The plaintiff then filed a petition in the district court of Osage county, praying that its claim be declared to be a preferred claim against the assets of the bank. For answer the defendants contended that the claim of the plaintiff was a general claim and that it should not be preferred over the claims of other depositors in the bank. The trial court adjudged the claim of the plaintiff to be a preferred claim against the assets of the bank and ordered the liquidating agent to issue his voucher for the payment of the claim in full. From that judgment an appeal was taken to this court.

E. E. Garritt was the cashier of the bank at the time it was taken over by the defendants and he had been cashier of that bank for a number of years. Prior to December 1, 1928, he was the town treasurer of the town of Avant. During the time that he was town treasurer he deposited in the bank, at various times, money belonging to the town of Avant and held by him as town treasurer. That account was carried in the bank as "Sinking Fund Town of Avant Treas. E. E. Garritt." On December 1, 1928, Max Simon qualified as the town treasurer of the town of Avant, and on that date the balance in the bank in the account just referred to was transferred to a new account in that bank, entitled "Sinking Fund Town of Avant, Max Simon, Treas." After December 1, 1928, Max Simon, as town treasurer, deposited in that bank money that he received from the county treasurer for the credit of the sinking fund of the town of Avant, and that bank credited to that account the interest on the daily balances of that account. Max Simon, as town treasurer, wrote checks on that account. At the time the bank was taken over by the defendants there was a general balance in that account of $7,976.20. The bank did not give security for the deposit while E. E. Garrett was the town treasurer or while Max Simon was the town treasurer. After Max Simon qualified as town treasurer, E. E. Garrett had no further control over the account as town treasurer. The deposits of the money in the bank were made without any specific agreement that it should be held in trust by the bank or that the relation of debtor and creditor should not be created thereby. If the relation of debtor and creditor did not exist and if the money was held by the bank in trust, it was not by reason of any specific agreement to that effect.

The fact that the account was carried in the bank in the name of "Sinking Fund Town of Avant, Max Simon, Treas." did not make it a special account. That was but a designation of the account to distinguish it from the current expense account of the town. That it was deposited as a general account is shown by the fact that deposits to that account were made and checks on the account were drawn from time to time. In 18 Corpus Juris, p. 563, sec. 2, the author of the article says:

"A general deposit is one in which the identical subject-matter need not be returned; and, as distinguished from a deposit for safekeeping, this form of deposit has been termed a deposit for exchange, that is, one in which the depositary is only bound to return a thing corresponding in kind to that which is deposited. In determining whether or not a deposit is special, the character of the business of the depositary is entitled to considerable weight, but is not controlling. If that business is not financial in its nature, usually a deposit of money is special, although not necessarily so."

In 3 R. C. L., p. 518, sec. 147, the author of the article says:

"Money which is turned over to the officers of a bank without any request that it be kept separate from the other funds of the bank, which is entered upon the books

as a general deposit and a certificate of deposit issued for the amount, and which is later withdrawn by check, has all the characteristics of a general deposit, and is entirely lacking in any of the essential elements of a special deposit."

The territorial Supreme Court, in Bank of Blackwell v. Dean, 9 Okla. 626, 60 P. 226, held to the same effect.

In Re Salmon, 145 Fed. 649, that court held:

"The deposit of money in a bank establishes the relation of debtor and creditor between the depositor and the bank, and this, though the fund deposited arose from taxes levied for municipal and school purposes"

—and said:

"And it may also be conceded that although the fund so deposited arose from taxes for municipal or school purposes, it did not alter the relation of mere creditor and debtor, and that in case of bankruptcy of the depositary such depositor is not entitled to any preference over other creditors of the bank in the distribution of the assets of the estate."

In Dempsey Oil & Gas Co. v. Citizens' Nat. Bank, 110 Okla. 39, 235 P. 1104, this court held:

"A bank deposit, without any limitations, or restrictions, or qualifications, such as are usually made in the due course of business, subject to be drawn out by the depositor on demand, is a general deposit, and creates the legal relation of debtor and creditor, between the bank and depositor. In legal effect the deposit is a loan to the bank. This is equally so whether the deposit is of trust moneys, or funds which are impressed with no trust, provided the act of depositing is no misappropriation of the fund. The bank simply becomes indebted to the depositor in his fiduciary capacity."

The question then presented is: Is that rule applicable to a deposit in a bank of money belonging to a sinking fund of a town made by a treasurer of an incorporated town? A town treasurer, by the provisions of section 8577, C. O. S. 1921, as amended by chapter 62, Session Laws 1925, is required each day to make a deposit of all uninvested sinking fund money in his hands in some bank designated by the board of county commissioners as a county depository and furnishing the security required by law, at not less than three per cent. interest per annum on daily realized balances. The statute is mandatory in its terms and affords protection to town funds. When the town treasurer deposited in the bank money which he held to the credit of the sinking fund of the town of Avant, without requiring security

for the deposit, he violated the plain and unambiguous provisions of the statute cited. The bank had knowledge of that violation, for it knew that it had given no security for the deposit. That bank, from time to time, paid interest on the daily balances on that account and they were credited to the account. The plaintiff now asks not only for the return of its money, but it asks, and the trial court ordered, that it be paid the interest accruing and credited to that account on the daily balances. It thereby ratified the deposits. Interest could have been earned only by the bank investing the money. The requirement of our statute that a depository bank pay interest on the daily balances carries with it authority of the bank to invest the money in some manner intended to permit it to earn the money with which to pay the interest. A deposit in a bank of money belonging to a sinking fund of a town by the town treasurer of an incorporated town, in the absence of an agreement to the contrary, is a general deposit and not a special one. Such was the holding in Multnomah County v. Oregon Nat. Bank, 61 Fed. 912, wherein it was held:

"A county whose funds are deposited in a bank that fails has no preference over other depositors, as to the bank assets, where the identity of the funds deposited by the county has been lost. San Diego Co. v. California Nat. Bank, 52 Fed. 59, disapproved"

—and said:

"The fact that the money of such creditor or cestui que trust cannot be traced to the fund sought to be charged is the reason that the preference is refused. If his money has been paid out, or has otherwise disappeared, it would not be just that he should take, to the exclusion of the general creditors of the bank, who are in no way responsible for the bank's delinquency, and whose deposits may comprise the entire fund which such creditor seeks to appropriate to his exclusive use. His so-called right of preference, in other words, cannot in justice extend to the property of others. The theory of preference does not apply in these cases. There is no preference by reason of an unlawful conversion. The so-called right to be preferred in the case of a wrongful conversion is a right of ownership.—a right of property; a right which lays hold of the property whether in its original or in a substituted form; a right which follows the property so long as it can be ascertained to be the same property or its product, and only does so because the property to be reached can be ascertained to be the same property or its product. When the means of ascertainment of the identity of property or proceeds fail, the right fails."

It is said that that case is not in point for the reason that there was therein in-

volved a deposit in a national bank. It is cited herein for the reason that it correctly states the rule applicable to a state bank. To the same effect is Hummer v. Henryetta State Bank, 148 Okla. 66, 297 P. 264. The failure of the bank to furnish the bond may have been a tort for which both the bank and the town treasurer would be liable to the plaintiff, but though the plaintiff had recovered a judgment against the bank for the damages sustained by reason of a tort, it would be only a general creditor of the bank and as such would be entitled to only a pro rata payment of its claim. We are unable to agree with the contention of the plaintiff that the deposit in the bank of the money belonging to the sinking fund, without requiring security for the deposit, created a special deposit or a trust relationship. For that reason we will not discuss the cited cases relating to the enforcement of trusts.

The principal contention of the plaintiff is that it is entitled to preference under the common-law rule that the sovereign has preference over the rights of the subject. In support of that contention the plaintiff refers to section 170, C. O. S. 1921, as showing that the common law remains in force in aid of the general statutes of Oklahoma. However, it fails to consider that the common law therein referred to is that "as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people." As pointed out in Shull, State Bank Commissioner, v. Beasley, 149 Okla. 106, 299 P. 149, under the provisions of section 1, art. 14, of the Constitution of Oklahoma, the public policy of the state is for the protection of depositors in state banks. Under that policy it is the duty of this court to select from conflicting decisions those that tend to protect depositors in a bank rather than those intended to protect those who claim a preference over depositors in a bank. Our attention is called to no provision of our statute, and we know of none, by which the deposit of money in a bank by the treasurer of an incorporated town shall have preference over money deposited in a bank by a private individual. To that effect was the holding in National Surety Co. v. Pixton, State Bank Com'rs (Utah) 208 Pac. 878, wherein that court held:

"Where the assets of an insolvent bank, having state funds on deposit, passed into the possession of the State Bank Commissioner before the state exercised the right of priority that comes to it from the common law as a sovereign right, such right was lost, and was not enforceable by the surety who guaranteed the repayment of the funds.

"The state, by authorizing the State Treas-

urer to deposit state funds in certain banks and compelling him to require the bank to give a bond to secure the repayment of the funds, clearly indicated that it did not intend to assert the right of priority that comes to it from the common law as a sovereign right."

If the plaintiff sustains a loss, that loss will be due to the fact that the town treasurer deposited the funds of the town in a bank which had not furnished the security required by law for such deposits. Whether or not the sureties on the official bond of the town treasurer are liable to the plaintiff for the amount of the loss is not before this court for determination.

In our opinion the judgment of the trial court is contrary to law. For that reason that judgment is reversed. The cause is remanded to the trial court, with directions to vacate its judgment and to enter an order denying the claim of the plaintiff.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur.

Note.—See under (2) annotation in 31 A. L. R. 472; 3 R. C. L. 642. (3) 22 R. C. L. 223 et seq.; R. C. L. Pocket Part, title Public Funds, § 2.