INDEPENDENT CONSOLIDATED SCHOOL DISTRICT OF DOW CITY, Appellee, v. CRAWFORD COUNTY TRUST AND SAVINGS BANK, Appellant; H. E. QUALHEIM, Appellee. CRAWFORD COUNTY TRUST AND SAVINGS BANK, Cross-Petitioner, Appellant, v. GAULDING MOTOR COMPANY et al., Appellees; CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY, Defendant.

No. 45203.

JUNE 17, 1941.

REHEARING GRANTED JANUARY 10, 1942.

508

Powers & Gilchrist, of Denison, for appellant.

Powers & Gilchrist, of Denison, William P. Welch, of Logan, G. F. Nye, of Omaha, Nebraska, Prichard & Prichard, of Onawa, and Floyd E. Page, of Denison, for appellees.

OLIVER, J.—Action in equity by Independent Consolidated School District of Dow City, Iowa, hereinafter referred to as school district, against its depository bank, Crawford County Trust and Savings Bank of Denison, Iowa, hereinafter referred to as bank, to recover on account of school funds misappropriated by Glenn Leslie, who was treasurer of said school district from 1934 till his death in July 1937. Leslie, as such treasurer, maintained two accounts in said bank, a general fund and a schoolhouse fund.

During the period between July 1935, and March 1937, Leslie wrongfully withdrew and misappropriated a total of more than $13,000 by means of about 110 checks drawn by him on the general fund of the school district in said bank. Five of these checks were made payable to the order of Leslie himself and were endorsed and cashed by him. One was payable to the order of the bank and was apparently cashed there by Leslie. Leslie also made 26 checks payable to fictitious payees, which he cashed after endorsing thereon the names of such payees. Seventy-eight checks were made to the order of various persons and corporations in payment of Leslie's private obligations, principally for merchandise purchased in connection with his furniture and electrical-appliance business. All of said checks except the afore-mentioned one payable to the bank were cashed by other banks and by them forwarded to the depository bank for payment. As a result of these withdrawals, the general fund in the bank was reduced accordingly. At times it was

overdrawn and was replenished by transfers from the school-house fund.

Count 1 of the petition is based upon transfers aggregating $3,572.49 allegedly wrongfully made from the schoolhouse fund to the general fund in 1937. The amendment to count 1 is founded upon a similar $2,000 transfer made March 23, 1936. Counts 2, 3, 4, 5, and 6 seek recovery from the bank for the various amounts misappropriated by means of the 110 checks. The bank cross-petitioned against certain payees of checks and various other banks, praying that in the event of recovery against it on counts 2 to 6 it have judgment against said defendants in cross-petition for the amounts of the checks received by or guaranteed by them respectively.

Trial to the court resulted in decree and judgment against the bank for the $3,572.49 transferred from the schoolhouse fund to the general fund in 1937, as claimed in count 1 of the petition. No recovery was allowed upon the amendment to count 1 or upon the other counts of the petition. The holding upon counts 2 to 6 rendered unnecessary the consideration of the bank's cross-petition and the decree dismissed the same.

I. We will first consider the appeal of the school district from that part of the decree denying the recovery sought under counts 2 to 6 on account of the payment of the 110 (misappropriation) checks on the general fund.

Defendant bank was the approved depository in which Leslie was required to deposit all school funds in his hands. Section 7420-d1, Code of Iowa, 1935. Code section 4316 required him, as school treasurer, to receive school funds and pay the same out only upon orders (warrants) signed by the president and secretary. The statutes contemplate the presentation of warrants to the treasurer and his payment thereof out of funds in the depository bank.

As heretofore noted, two school funds were maintained in said bank, a general fund and a schoolhouse fund. Questions involving the schoolhouse fund will be later considered. This division deals with the general fund only.

About 450 warrants, aggregating about $30,000, signed by the secretary and president, were issued each year. Prior to

July 1935, Leslie executed no checks. During that period all warrants were presented to the bank, which paid the same and charged the general fund of the district therewith. There is no controversy concerning charges against the account for warrants cashed by the bank at any time. After July 1, 1935, there was some change in the practice, in that, although the bank continued to cash warrants, Leslie also checked against the account. Counsel for the school district assert that the only checks made by Leslie during the ensuing two years were the 110 misappropriation checks, but, as we understand the record, he also issued a few checks on the depository account direct to the holders of warrants in payment therefor.

One contention of the school district is that Leslie had no authority to issue checks because the change in the method of making disbursements had not been authorized by the school board. As hereinbefore noted, the statute required the treasurer to receive, deposit, and pay out school funds. The disbursement of funds by check or order on the depository was necessarily incident to the performance of such statutory duties, and the power to make the same was, therefore, implied. Hence, no further authorization was required.

It is also contended that the checks were defective in form. They were signed "Glenn Leslie, Treas.," without any indication in the signature or upon the checks that they were drawn upon the account of the school district. The practice of paying out public moneys upon checks which do not upon their face indicate the public character of the fund upon which they are drawn indicates laxity and is not to be commended. However, we do not think this affected the validity or negotiability of the checks. Nor was the signature insufficient. It was in the form agreed upon between Leslie and the bank. 7 Am. Jur. 360.

In count 2 of the petition the school district asserts the bank had no right to honor the 26 checks made to the order of fictitious payees. It is contended the endorsements of the names of said payees on the backs of the checks, made by Leslie, were forgeries, and that under Code section 9483 no rights could be acquired thereunder.

However, the real question at this point concerns the

applicability of Code section 9469, which provides, with reference to negotiable instruments:

"The instrument is payable to bearer: * * * When it is payable to the order of a fictitious or nonexisting person, and such fact was known to the person making it so payable; * * * ."

Under this statute, as well as under prior decisions, the rule appears to be well settled that where such a check is presented the bank is authorized to pay it to the bearer regardless of whether prior endorsements were genuine. 9 C. J. S. 683; 7 Am. Jur. 436, 839, 840, 844; Ann. Cas. 1918A, 669; American Express Co. v. Peoples Savings Bank, 200 Iowa 408, 412, 205 N. W. 1, 2.

In this case it is clear Leslie made the checks payable to the order of fictitious and nonexisting persons, knowing them to be such, and that the checks were handled and honored as he intended. Therefore, under Code section 9469 these would be bearer checks, and the rights of the bank to honor the same would not be affected by the provisions of Code section 9483.

Counsel for the school district practically concede this proposition but contend Code section 9469 is not applicable, because, say they, checks of a school treasurer upon a depository bank, though negotiable in form, are not negotiable instruments. The authorities cited as sustaining this view involve warrants, orders, or certificates of indebtedness of public corporations. See Clark v. Des Moines, 19 Iowa 199, 87 Am. Dec. 423; Annotations in 36 A. L. R. 949; 56 C. J. 565. These have generally been regarded as acknowledgments of indebtedness or promises to pay and not as negotiable instruments in the sense of the law merchant.

But the rule of nonnegotiability is not applicable to checks of a school treasurer drawn upon a depository bank. Such holding would impede the flow of such checks through regular commercial channels. It would, in effect, render the depository responsible for the acts of the treasurer, the same as a surety. This is not the measure of the bank's liability. See Andrew v. Farmers' Trust & Savings Bank, Iowa, 226 N. W. 714, and cases therein cited; 7 Am. Jur. 296, 374; 9 C. J. S. 715.

The rights of holders of such checks, made within the

general powers of such officers, are the same as those accorded by commercial rules and practice to the checks of individuals. See United States v. Guaranty Trust Co., 293 U. S. 340, 350, 55 S. Ct. 221, 79 L. Ed. 415, 95 A. L. R. 651. We hold these checks were negotiable and that the bank was not liable thereon upon the theory presented.

Other counts of the petition seek recovery from the bank for the entire amount misappropriated by Leslie by means of checks to himself, checks to fictitious payees and checks to others for his personal obligations. That Leslie wrongfully withdrew from the bank and misappropriated said funds is not disputed. But the establishment of these wrongful withdrawals by the treasurer is not sufficient to render the bank liable therefor in the absence of proof of its participation, knowledge, or notice. 9 C. J. S. 715.

In Andrew v. Farmers' Tr. & Sav. Bk., Iowa, 226 N. W. 714, this court said:

"Was the bank bound to know at its peril that all withdrawals made by the treasurer of the school corporation were supported by warrants legally issued by president and secretary? Though the treasurer held the funds of the school district in trust, yet their deposit in the bank was rightful and under the express authority of the school board. The deposit was general, and not special. In a legal sense the bank was not chargeable therefor as a trustee. Its relation to this deposit was the same as it was to any other general deposit—that of creditor. This is fully settled in our cases. Officer v. Officer, 120 Iowa, 389, 94 N. W. 947, 98 Am. St. Rep. 365; Hunt v. Hopley, 120 Iowa, 695, 95 N. W. 205; Incorporated Town of Conway v. Conway, 190 Iowa, 563, 180 N. W. 677; School Tp. v. Stevens, 158 Iowa, 119, 138 N. W. 927; Brown v. Sheldon State Bank, 139 Iowa, 83, 117 N. W. 289.

"No statute is brought to our attention which charges the bank with any special duty toward this deposit, as distinguished from other deposits made by trustees. In the absence of bad faith on the part of the bank, we think it must be held that it had no such control over the deposit as would charge it with the

duty to challenge the authority of the treasurer as its depositor to make such withdrawals as he saw fit.''

The general rule is that if a bank has notice or knowledge that a fiduciary is misappropriating or intends to misappropriate trust funds which he seeks to withdraw, good faith requires that the bank prevent such accomplishment. By failing so to do the bank makes itself a privy and instrumentality to the commission of the fraud and, therefore, liable for the amount misappropriated. 7 Am. Jur. 375. Adequate notice to the bank may come directly or from circumstances which reasonably support the sole inference that a misappropriation is intended. That question must be determined upon the particular facts and circumstances of each case. 7 Am. Jur. 376.

In this case there is no evidence tending to show the bank had actual knowledge of Leslie's defalcations. The school district relies upon the few checks payable to Leslie, which it contends put the bank on notice. But Leslie did occasionally receive payments upon bills which had been allowed by the district, and the checks here in question were not in such numbers or amounts as to indicate misappropriation. The trial court found the bank paid the checks in good faith.

It is our conclusion this finding was correct and that recovery upon counts 2 to 6 of the petition was properly denied the school district. This holding results in an affirmance of the appeal of the bank as to the parties who were defendants in cross-petition.

The several motions to dismiss the appeal of the bank are overruled.—Modified and affirmed.

HALE, C. J., and SAGER, STIGER, BLISS, GARFIELD, MILLER, and WENNERSTRUM, JJ., concur in the foregoing opinion.

Supplemental Opinion

April 7, 1942.

Rehearing Denied October 20, 1942.

Sager, J.—An opinion herein will be found in 298 N. W. 667. Petitions for a rehearing were filed by both appellant Crawford County Trust and Savings Bank and appellee Independent Consolidated School District of Dow City, Iowa, requesting a re-examination of that decision. Reconsideration of the record impels us to file this as a supplemental opinion. For convenience, plaintiff will be treated as sole appellee and the Crawford County Trust and Savings Bank as sole appellant.

The facts are as stated in the opinion above noted and need not be repeated. We hold that the first division of that opinion is sound and in keeping with our previous pronouncements. It is reaffirmed.

II. Appellee argues vigorously against the reference to Andrew v. Farmers' Tr. & Sav. Bk., Iowa, 226 N. W. 714, urging that that case is not an authority because a rehearing was granted and because it is not officially reported. This argument is lacking in weight because predicated on a decision not at all parallel or analogous. We quote from appellee's petition for rehearing:

"The reasons why this Court granted a rehearing in the Andrew case are very apparent. Two days before it was granted, and on the 14th day of April, 1930, this Court handed down its decision in the case of Runyan v. Farmers Bank of Liberty Center, 210 Iowa 147, 230 N. W. 418."

That case is manifestly not like the one before us and is so little calculated to have moved the court to grant a rehearing in the Andrew case, supra, that we do not take the time to analyze it. At any rate, the principles announced in the Andrew case have the support of our previous decisions and the weight of authority generally. The case before us presents no reason for announcing a different rule.

We find that the decree of the trial court, with reference

to the questions presented by counts 2 to 6, inclusive, of the petition, is right. Appellee's argument that various sections of the Code entered into the contract of deposit so as to compel the bank, before honoring a check, to ascertain to a certainty that the proceeds of the check were being applied to proper purposes, is not persuasive. The statutes as we read them do not lead to such result. Section 7420.01 (formerly section 7420-d1, Code, 1935), appearing in chapter 352.1 of title XVI, Code, 1939, deals with the deposit of public funds and does not purport to fix the liability of banks which honor checks drawn against such public funds. The same may be said of sections 4316 and 4317. These deal with the duties of the treasurer and not with those of depositories. The last-quoted sections appear in chapter 220 of title XII of the Code, which has to do only with education.

It may be conceded that, as an abstract proposition, appellant was bound to know the law; but we find no warrant for the conclusion appellee would have us draw that such knowledge imposes upon a depository the responsibilities of the officers who make deposits of public funds. Such a rule would make the bank the surety of such public officer.

The second division of our former opinion, dealing with the question of liability of the bank for transfer of funds from one account to another, is withdrawn and the following substituted as a supplement to our original opinion:

Re-examination of the problem presented by the issues on count 1 and the amendment thereto, having to do with the liability of the bank because of the transfer of funds from one account to another, compels the conclusion that the trial court was in error here. There were involved in this case no cash transactions. None of appellee's fund left the bank except through the medium of checks which we have held in division I hereof to have been properly honored by the bank. It is apparent, therefore, that transfer of funds from one account to another could not have caused a loss to appellee. Whether in one fund or in the other, in one account or another, it still belonged to the school district.

It follows that the trial court was wrong in awarding judgment against appellant because of transfers from one fund

to another. For convenience, we set out some of the authorities cited by the parties, but if there be anything in them which demands a result different than here announced we have overlooked it. Grebe v. First State Bk., 136 Tex. 226, 150 S. W. 2d 64; Hartford Accident & Indemnity Co. v. Farmers Nat. Bk., 24 Tenn. App. 699, 149 S. W. 2d 473; Colby v. Riggs Nat. Bk., 67 App. D. C. 259, 92 F. 2d 183, 114 A. L. R. 1065; State National Bk. v. Dodge, 124 U. S. 333, 8 S. Ct. 521, 31 L. Ed. 458–462; Shull v. Town of Avant, 159 Okla. 271, 15 P. 2d 49; Campion v. Big Stone County Bank, 177 Minn. 51, 224 N. W. 258; Georges Twp. v. Union Trust Co., 293 Pa. 364, 143 A. 10; People v. Home State Bk., 338 Ill. 179, 170 N. E. 205; White-Dulany Co. v. Craigmont State Bk., 48 Idaho 100, 279 P. 621; 7 Am. Jur. 374, section 520; 9 C. J. S. 700, 715, section 353; German Sav. Bk. v. Citizens Nat. Bk., 101 Iowa 530, 70 N. W. 769, 63 Am. St. Rep. 399; Hanby v. First Sav. Bk., 197 Iowa 150, 197 N. W. 51; Gillett v. American Sav. Bk., 219 Iowa 497, 258 N. W. 99.

We conclude that the trial court was right in its decision of the questions involved in division I and wrong as to division II.

The motions to dismiss these appeals are overruled.

The case is, accordingly,—Reversed on appellant's appeal; affirmed on the appellee's appeal; and remanded for a decree in conformity herewith.

BLISS, C. J., and MILLER, MITCHELL, and HALE, JJ., concur in the foregoing opinion of SAGER, J.

OLIVER, STIGER, GARFIELD, and WENNERSTRUM, JJ., dissent from the second division of the opinion of SAGER, J.

OLIVER, J. (dissenting)—II. Code section 4177 authorizes the holding of a special election upon the question of voting a tax or authorizing the issuance of bonds, or both, to secure, repair, and improve a school building and grounds, etc.:

" * * * All moneys received for such purposes shall be placed in the schoolhouse fund of said corporation and shall be used only for the purposes for which voted."

Code section 4317 provides that the money received from the sale of bonds and taxes levied to pay the same, etc.:

" * .* * shall be called the schoolhouse fund and, * * * may be used only for the purpose for which originally authorized or certified. All other moneys received for any other purpose shall be called the general fund. The treasurer shall keep a separate account with each fund, paying no order that fails to state the fund upon which it is drawn and the specific use to which it is to be applied."

These and all other pertinent statutes regulate the powers and duties of a depository bank as well as those of a school district and its treasurer. They are read into and become a part of the deposit agreement between a school district and its legal depository. Among the statutory provisions here involved are those providing for two separate funds, a general fund and a schoolhouse fund, that the schoolhouse fund shall be used only for the purposes for which voted and that the treasurer shall keep a separate account with each fund. Priest v. Whitney L. & Tr. Co., 219 Iowa 1281, 1287, 261 N. W. 374, 378.

Count 1 and the amendment to count 1 of the petition are founded upon alleged wrongful transfers from the schoolhouse fund to the general fund. The record shows that on March 23, 1936, the general fund became exhausted and there were certain unpaid checks on said fund then in the hands of the bank. This deficit resulted from Leslie's misappropriations. To replenish said fund, the bank, with the consent of Leslie, by debit memorandum, on March 23, 1936, transferred $2,000 from the schoolhouse fund to the general fund. On May 8, 1936, after the general fund had been built up from tax receipts, the $2,000 was restored to the schoolhouse fund by a check on the general fund.

In 1937, the bank transferred from the schoolhouse fund to the general fund, on February 20th, $2,000; on March 8th, $50; on March 10th, $1,000; and on March 20th, $157.30 to cover overdrafts in said general fund. These transfers totaled $3,207.30. On April 22, 1937, the general fund received a substantial sum from tax collections, and on that date Leslie gave the bank a check on the general fund for $3,207.30, which was

deposited in the schoolhouse fund in replacement of the amounts withdrawn. Shortly thereafter, on May 25, 1937, Leslie and the bank transferred to the general fund the balance of $365.19 then remaining in the schoolhouse fund.

Various propositions are raised by the bank in argument. It is suggested the statute does not require the treasurer to keep separate bank accounts and thus increase not only the work of the bank but also its responsibilities. One answer to that suggestion is that the treasurer did maintain separate bank accounts. A consideration of said statutory requirements or of the bank's liability under a different factual situation is, therefore, unnecessary.

The bank also contends there is a distinction between the schoolhouse fund and the schoolhouse-fund account in the bank. This distinction does not appear substantial. The statutes require that all school funds be deposited in the bank and contemplate that all schoolhouse payments be made therefrom. Therefore, where the two accounts are maintained, the schoolhouse-fund account in the bank is the actual schoolhouse fund (except for checks or orders temporarily in transit). Strictly speaking, any erroneous or wrongful withdrawals reduce the schoolhouse fund accordingly, notwithstanding the figures in the treasurer's books.

Along this same line is the argument of counsel for the bank that there is no showing the transfers were not made to meet checks properly chargeable to the schoolhouse fund. Counsel overlook the fact that in each year the exact total transferred from the schoolhouse fund was retransferred to the schoolhouse fund upon receipt of new tax money in the general fund. We think the retransfers of the identical amounts previously transferred fairly indicate that the original transfers to the general fund were not made to meet checks properly chargeable to the schoolhouse fund or to make adjustments between the two accounts.

In this case the bank was required to know (and knew) that the two funds were separate and distinct and that the schoolhouse fund could be used for that special purpose only. Obviously, the use of this fund to cover overdrafts in the general

fund was improper. The conduct of the bank in transferring the money from the schoolhouse fund to the general fund and in participating in the subsequent retransfers was wrongful. The statutes forbid the juggling of these funds. I believe, as did the trial court, that the bank should be held liable for the loss resulting from said wrongful acts.

The $2,000 transferred from the schoolhouse fund to the general fund in 1936, and the $3,207.30 transferred in February and March 1937, resulted in losses in said amounts to the funds of the district. The effect of these transfers was to use schoolhouse-fund money to restore in part misappropriations by Leslie from the general fund and to furnish the means for additional misappropriations. Thus said transferred funds were lost to the district. Had the money so diverted from the schoolhouse fund been replaced with funds secured from outside sources the district would have sustained no ultimate loss in the transfers. But the money later repaid the schoolhouse fund, in each case came from tax moneys belonging to the school district which had just come into the general fund. Said repayments were wrongful and reduced the general fund accordingly. The transfers also enabled Leslie to conceal and continue his misappropriations. The $365.19 transferred from the schoolhouse fund to the general fund on May 25, 1937, was not retransferred. On June 30, 1937, the entire balance in the bank was $2.39.

The trial court awarded the school district judgment against the bank for $3,572.49 on account of the 1937 transfers. In my opinion, the school district should also have judgment against the bank on account of the 1936 transfer in the sum of $2,000 with interest at 5 per cent per annum from May 8, 1936.

STIGER, GARFIELD, and WENNERSTRUM, JJ., join in this dissent.