# STATE NATIONAL BANK OF SPRINGFIELD *v.* DODGE.

### ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

Submitted January 9, 1888. — Decided January 23, 1888.

A District Court of the United States deposited in a national bank bank-
ruptcy moneys, which were entered by the bank to the credit of the
court, in an account with the court. Each entry of a deposit in the books
of the bank, and in the deposit book of the court, had opposite to it a
number, consisting of four figures, which the bank understood to indi-
cate a particular case in bankruptcy — in the present instance, No. 2105.
A check was drawn on the bank by the court, to pay a dividend in case
No. 2105. Payment of it was refused by the bank, on the ground that it
had no money on deposit to the credit of the court, it having paid out all
money deposited by the court. Some of such money deposited with the
number 2105 had been paid out by the bank on checks drawn bearing
another number than 2105. There was enough money deposited with the
number 2105, and not paid out on checks bearing the number 2105, to
pay the check in question. In a suit against the bank by the payee in
such check to recover the amount of the dividend, *Held*, that the bank
was not liable.

AT LAW. The case is stated in the opinion of the court.

*Mr. Milton Hay* and *Mr. Henry S. Greene* for plaintiff in
error.

*Mr. George Hunt* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law brought in the Circuit Court of the
United States for the Southern District of Illinois, by John L.

Dodge against the State National Bank of Springfield, Illinois, to recover a sum of money on an indebtedness alleged to have arisen under the circumstances set forth in the certificate of division of opinion hereinafter referred to. After issue joined, the parties filed a stipulation in writing that the cause should be tried before the court without the intervention of a jury. It was so tried before the court held by the Circuit Justice and the Circuit Judge, and, they having differed in opinion as to certain questions arising at the trial, which questions were embodied in such certificate of division, duly filed, a judgment was entered for the plaintiff, in accordance with the opinion of the Circuit Justice, for the sum of $2326.80 and costs.

It is stated in the certificate that on the trial the court found the following facts:

"1. That the defendant was appointed depository for the United States District Court for the Southern District of Illinois about March 1st, 1873.

"2. That on March 4th, 1873, George P. Bowen, clerk of the District Court, made the first deposit of funds belonging in the registry of said District Court with said bank, and the bank then, by direction of clerk Bowen, opened an account with 'The United States District Court for the Southern District of Illinois,' and entered said deposit to the credit of said court, and that each deposit so made by the clerk was by the bank entered on its book, and on the deposit book of the clerk, to the credit of the particular case, naming the case with the number, to which the funds so deposited belonged; that afterwards, by direction of the clerk, all deposits so made were entered by the bank in the name of 'The United States District Court for the Southern District of Illinois,' dropping the name, but retaining the number of the case, as hereinafter specially set forth.

"3. That said clerk continued to make deposit of funds belonging in the registry of said court with said bank up to his death, which occurred in February, 1880, and said bank continued to enter said deposits to the credit of the court in the manner directed by the clerk.

"4. That the entries of these deposits were made under

direction of the clerk, both on the books of the bank and on the deposit book retained by the clerk, in the following manner, viz. :

| | | | |
|---|---|---|---|
| 1873, March 4th. | To dep. 1971 | . . . . . . | $1075 00 |
| 1874, January 30th. | To dep. 1425 | . . . . . . | 225 00 |
| 1875, January 11th. | To dep. 1590 | . . . . . . | 4619 22 |
| 1876, January 24th. | To dep. 1637 | . . . . . . | 5200 00 |

"5. That at the time each deposit was made the clerk brought. to the bank the money to be deposited, together with his depositor's book, and a ticket which would be like the following, differing only as to number, date, and amount :

"'STATE NATIONAL BANK,
"'SPRINGFIELD, ILLS., March 4th, 1873.
"'Deposited by George P. Bowen, clerk, current
funds, No. 1971 . . . . . . . . . . $1075 00 ;'

whereupon the cashier of the bank would receive the funds and the ticket and enter in the clerk's deposit book, as well as in the books of the bank, under the account with 'The District Court for the Southern District of Illinois,' as follows :

"'1873, March 4th. To dep. 1971 . . . . . . $1075 00 ;'

that the bank understood, when these entries were made, that the numbers on either side of the account (as No. 1971 above) referred to the case in which the deposit in the first place was made and in which the check in the second place was drawn.

"6. That case No. 2105 was pending on the bankruptcy side of the court, and, during the years 1879, 1880, and 1881, money to the amount of $38,300, realized from the estate of H. Sandford & Co., and belonging in said case, was paid into the registry of the court, and by the clerk Bowen, and his successor, Converse, deposited with said court, from time to time, and entered, like all other deposits, to the credit of said court, each deposit of the item of this fund being accompanied by a ticket from the clerk like the following, differing only as to date and amount, viz. :

"'STATE NATIONAL BANK,

"'SPRINGFIELD, ILLS., July 25th, 1879.

"'Deposited by George P. Bowen, clerk, current
funds, No. 2105 . . . . . . . . . . . $17,000 00;'

said deposit account in said case being in full as follows:

"'The State National Bank of Springfield, Ills., in ac. with
U. S. dist. court, S. dist. Ills.

| | | | | |
|---|---|---|---|---:|
| 1879, July 25th. To dep. 2105 . . . . . . . | $17,000 00 |
| Aug. 7th. " " 2105 . . . . . . . | 5,000 00 |
| 1880, Jan'y 10th. " " 2105 . . . . . . . | 4,000 00 |
| Oct. 14th. " " 2105 . . . . . . . | 10,000 00 |
| Nov. 12th. " " 2105 . . . . . . . | 2,000 00 |
| 1881, Feb'y 25th. " " 2105 . . . . . . . | 300 00 |

"7. That the officers of the bank, on receiving deposits accompanied by such ticket, understood the 'No. 2105' on the ticket to refer to a case of that number in the District Court.

"8. That the orders drawn by the court on the bank, for funds, in bankruptcy cases, were in the following form, the blanks being filled out to suit each case:

"'Check No. ——.  Case No. ——.

In the District Court of the United States for the Southern District of Illinois.

In the Matter of —— ——, Bankrupt.

SPRINGFIELD, ILLS., —— ——, 188-.

The State National Bank, U. S. depository.

Pay to the order of —— —— —— dollars, being in full for the dividend of —— per cent declared —— ——, 188-, on —— claim for $——, proven against said bankrupt estate.

$——.  —— ——, Clerk.

Countersigned:

—— ——, Judge.'"

The 9th finding of fact sets forth that the checks or orders so drawn and in controversy in this case were six in number,

each in the form of the blank set forth in finding No. 8. In two of the checks, the figure following the words "Check No." was the figure "2," in two others of them, the figure "3," in one of them, the figures "27," and in the remaining one, the figures "28." In each of them, the figures following the words "Case No." were "2105." One check numbered "2" was entitled "In the Matter of Andrew Gundy;" the other check numbered "2," "In the Matter of Joseph Bailey." One check numbered "3" was entitled "In the Matter of Abner P. Woodworth;" the other check numbered "3," "In the Matter of Joseph Bailey" Check No. 27 and Check No. 28 were each entitled "In the Matter of H. Sandford & Co." Each of the six checks was dated May 12, 1881, and each was payable "to the order of George Hunt, att'y for John L. Dodge." The Gundy check No. 2 was for $517.33, "in full for the dividend of $2\frac{1}{2}$ per cent declared April 30th, 1881," on a claim for $20,693.33. The other check No. 2 was for $75.48, "in full for the dividend of $\frac{33}{100}$ per cent declared April 30th, 1881," on a claim for $22,874.98. One of the checks No. 3 was for $724.26, "in full for the dividend of $3\frac{1}{2}$ per cent declared April 30th, 1881," on a claim for $20,693.33. The other check No. 3 was "in full for the dividend of $\frac{33}{100}$ per cent declared April 30th, 1881," on a claim for $20,693.33. Check No. 27 was for $160.12, "in full for the dividend of $\frac{7}{10}$ per cent declared April 30th, 1881," on a claim for $22,874.98. Check No. 28 was for $144.85, "in full for the dividend of $\frac{7}{10}$ per cent declared April 30th, 1881," on a claim for $20,693.33. Each check was signed by the clerk of the District Court, and was countersigned by the District Judge.

The findings then proceed as follows:

"$9\frac{1}{2}$. That Andrew Gundy, Joseph Bailey, Abner P. Woodworth, and Hiram Sandford were all members of the firm of H. Sandford & Co., whose case is numbered 2105 herein, and that all of said parties were each individually adjudged bankrupts in said cause.

"10. That said checks were presented at the bank for payment and payment refused, and the checks were protested for non-payment, June 27th, 1881.

"11. That the funds actually belonging to said case No. 2105 and deposited with said bank in manner aforesaid were sufficient to pay all checks drawn by the clerk, and counter-signed by the judge, in favor of creditors in said case, including said checks in controversy, the funds so deposited amounting to $38,300, as aforesaid, and all checks drawn thereon, including the checks in controversy in this suit, amounting to $33,356.19, leaving a balance to the credit of said case of $4943.81.

"12. That the bank, before the presentation of the checks in controversy, had actually paid out, on checks similar to the above, signed by the clerk and countersigned by the judge, and differing only as to number of case, names, dates, and amounts, all the funds ever deposited with it to the credit of the court, many of such checks being drawn, as indicated therein, in cases in which no deposits had been made by the clerk.

"13. That, from the time of the first deposit with said bank, as depository of said court, up to the death of said Bowen, in February, 1880, the bank balanced the account with said court nine different times, returning all the checks to the clerk at each balancing, and entering the case, No., and amount, of each check so returned, in the depositor's book of the clerk, these balances being struck at the following dates, and showing each time the general balance to the credit of the court, as follows, viz:

| | |
|---|---:|
| August 30th, 1877 | $13,691 57 |
| December 8th, 1877 | 11,024 74 |
| January 5th, 1878 | 7,853 04 |
| January 23d, 1879 | 8,594 00 |
| February 28th, 1879 | 11,456 01 |
| June 2d, 1879 | 27,095 36 |
| August 2d, 1879 | 28,273 82 |
| October 30th, 1879 | 21,244 48 |
| January 10th, 1880 | 32,670 57 |

"14. That the last balancing of said account, showing how it stood when the bank refused to pay the check in contro-

versy, was in July, 1881, when the account showed a balance of $43.13 against the court.

"15. That the bank always treated the account as an entirety, and paid out of it all checks drawn by the clerk and countersigned by the judge, until the deposits were exhausted, and, in so doing, the deposits were exhausted before the drawing and presentation of the checks in controversy; many of such checks so paid having been drawn in cases, as indicated by the numbers, in which no deposit had been made by the clerk.

"16. That the bank was never served with a copy of the order of the district court appointing it a depository of the court, but its cashier was orally informed thereof by the clerk of the court, and thereafter the bank acted as such depository, receiving and paying out money under the orders of the clerk, countersigned by the judge, as above given.

"17. That the bank never was furnished with a copy of Rule 28 in bankruptcy, and had no actual knowledge of the rule.

"18. That neither the clerk Bowen, nor his successor, Converse, presented to the district court at each or any regular session of said court, after the defendant was so appointed depository, the account and vouchers required by § 798 of the Revised Statutes of the United States.

"19. That neither of these clerks made, or was required to make, at any time after the defendant was appointed depository, the monthly report provided for by Rule 28 in bankruptcy.

"20. That the civil and criminal and admiralty cases in the district court are numbered from one, consecutively, and, at the time the deposits in question were made, there were two cases numbered 2105, in the district court. There was no evidence that deposits were or were not made in this bank in favor of, or checks drawn on, any other number 2105 than those drawn in this bankruptcy case."

Rule 28 in bankruptcy, referred to in the 17th and 19th findings of fact, was in these words:

"The district court in each district shall designate certain

national banks, if there are any within the judicial district, or, if there are none, then some other safe depository, in which all moneys received by assignees or paid into court in the course of any proceedings in bankruptcy shall be deposited; and every assignee and the clerk of said court shall deposit all sums received by them severally, on account of any bankrupt's estate, in one designated depository, and every clerk shall make a report to the court of the funds received by him, and of deposits made by him, on the first Monday of every month. On the first day of each month, the assignee shall file a report with the register, stating whether any collections, deposits or payments have been made by him during the preceding month, and, if any, he shall state the gross amount of each. The register shall enter such reports upon a book to be kept by him for that purpose, in which a separate account shall be kept with each estate; and he shall also enter therein the amount, the date, and the expressed purpose of each check countersigned by him. No moneys so deposited shall be drawn from such depository unless upon a check, or warrant, signed by the clerk of the court, or by an assignee, and countersigned by the judge of the court, or one of the registers designated for that purpose, stating the date, the sum, and the account for which it is drawn; and an entry of the substance of such check or warrant, with the date thereof, the sum drawn for, and the account for which it is drawn, shall be forthwith made in a book kept for that purpose by the assignee or the clerk; and all checks and drafts shall be entered in the order of time in which they are drawn, and shall be numbered in the case of each estate. A copy of this rule shall be furnished to the depository so designated, and also the name of any register authorized to countersign said checks."

'Section 798 of the Revised Statutes of the United States, referred to in the 18th finding of fact, was in these words: "At each regular session of any court of the United States, the clerk shall present to the court an account of all moneys remaining therein, or subject to its order, stating in detail in what causes they are deposited, and in what causes payments

have been made; and said account and the vouchers thereo shall be filed in the court." ·

The certificate goes on to state that the Judges found and agreed upon the foregoing facts, and differed in opinion on the following questions of law:

"First. Was it the duty of plaintiff in error to keep a separate account with each case in bankruptcy in which deposits were made in the bank?

"Second. Was it the duty of plaintiff in error to refuse any check drawn in the name of the court and countersigned by the judge thereof, unless such check specified the case in bankruptcy on account of which the same was drawn, and there were funds in the bank to the credit of such cause?

"Third. Did the failure of the bank to keep such separate accounts, or its action in paying out all the funds deposited to the credit of the court on checks drawn generally, leaving no funds to meet the checks in controversy, render the bank liable in this action?

"Fourth. Did the fact that the defendant bank paid out and exhausted all the funds placed to the credit of the court on checks some of which did not bear the number of any case from which funds had been derived, render the defendant liable on the checks in controversy, when, if separate accounts ha·· been kept with each case or number, there would have ·teen funds to the credit of case No. 2105 sufficient to satisfy said checks?

"Fifth. Notwithstanding the fact that the defendant bank opened an account with 'The United States District Court for the Southern District of Illinois,' and credited the funds received in bankrupt cases generally to the credit of said court 'in the manner directed by the clerk' of said court, and notwithstanding the further fact that, from time to time, the bank settled said account with said court as a general account, was it, nevertheless, the duty of said bank to keep the funds received in each case of bankruptcy as a separate fund, to be applied only to the payment of such checks as were drawn in, and numbered in, the particular case from which such funds were derived?

"Sixth. Did the fact that the bank understood, when deposits were made, that the numbers on either side of the account, as 2105 in this case, referred to the case in which the deposit in the first place was made and in which the check in the second place was drawn, require the bank to keep the funds belonging to such case for the payment of checks drawn therein, notwithstanding the fact that the account was opened and kept as a general account with the court, as directed by the clerk of the court, and had, from time to time, been settled with the court as a general account?

"Seventh. Did the fact that the bank understood, when deposits were made, that the numbers on either side of the account, as 2105 in this case, referred to the case in which the deposit in the first place was made and in which the check in the second place was drawn, require the bank to keep the funds belonging to such case for the payment of checks drawn therein?

"Eighth. Was the fact that the bank understood, when deposits were made, that the numbers on either side of the account, as 2105 in this case, in which the deposit in the first place was made and in which the check in the second place was drawn, sufficient notice to the bank of the nature of such deposit, to justify it in refusing to pay out any of the funds arising therefrom on checks drawn, as indicated therein, in cases in which no deposits had been made by the clerk?"

The certificate states that the Circuit Justice was of opinion that each of the eight questions should be answered in the affirmative, and that the Circuit Judge was of opinion that they should be answered in the negative. The defendant has brought a writ of error to review the judgment.

Notwithstanding the various forms of the questions of law stated in the certificate, they substantially present but a single question, and that is, whether the bank was warranted in keeping its account with the District Court as a general account, or whether it was its duty to keep a separate account with each bankrupt estate. The ruling of the Circuit Justice was that it was the duty of the bank to keep such separate account with each bankrupt estate, and the judgment followed such ruling.

It being found as a fact that the funds actually belonging to case No. 2105, and deposited with the bank in the manner stated in the findings, were sufficient to pay the checks in controversy, if the bank had not, before the presentation of those checks, actually paid out, on like checks, differing only as to number of case, names, dates, and amounts, all the funds ever deposited with it to the credit of the court, many of such checks being drawn in cases in which no deposits had been made by the clerk, it is claimed by Dodge, that the money deposited, belonging to case No. 2105, was improperly paid out by the bank on checks drawn by the court on account of other cases. On the other hand, the bank claims that the deposits were made and entered to the credit of the court, and that the checks drawn were drawn against a fund on deposit to the credit of the court, and not against a fund on deposit to the credit of any particular case; that the bank had a right to presume that the court, as trustee, was properly performing its duty, and was bound to honor all checks drawn by the court as such trustee; and that the bank was under no duty to keep accounts for the court, and to inform the court that it was drawing checks in cases in which there were no funds to the credit of the case in which the check was drawn.

It clearly appears, from the findings of fact, that the deposits made in the bank by the clerk for the court were, according to the direction of the clerk, entered by the bank in the name of the "United States District Court for the Southern District of Illinois," without any name of any bankrupt, but with a number opposite the deposit and its date and amount, both in the books of the bank and in the deposit book retained by the clerk; and that the bank has paid out, upon checks drawn by the court, all the moneys deposited in it by the court, on checks drawn by the court, to parties who were entitled to receive the amounts of the checks from the court, as moneys which the court held in trust for the holders of the checks. Under these circumstances, the only question is, upon whom the loss shall fall, and whether it shall fall upon the bank by reason of any violation by it of any duty which rested upon it.

It is insisted by Dodge, that it was the duty of the bank to so keep its accounts as not to pay out on a check drawn on account of a case other than No. 2105, moneys deposited to the credit of the court by a deposit opposite to which the number "2105" was found in the books of the bank and in the deposit book of the court. The only fact in the case out of which such duty could arise, was the fact of the existence of the number "2105" in the books of the bank and in the deposit book of the court, and its absence from the face of the checks.

In the manner in which it kept the account, the bank at all times followed the directions of the clerk; and we are unable to see anything in the transactions which implies any notice to or duty upon the bank to keep or deal with the deposits made under each number as a separate account, especially in view of the balancings of the account stated in the 13th finding of fact. The claim on the part of Dodge is, that it was the duty of the bank, not merely to keep the funds of the court safely, but to refuse to honor the checks of the court if it found that the court was drawing checks in any particular case, according to its number, beyond the amount deposited in the bank under that number. But we are of opinion that the bank had a right to assume that these memoranda of numbers in the deposits and in the checks were merely for the convenience of the court and its officers; and that it also had a right to presume that the court and its officers were properly performing their duty in distributing its trust funds. *National Bank v. Ins. Co.*, 104 U. S. 54, 64.

The deposits were made to the credit of the court, in accordance with § 995 of the Revised Statutes, which required that "all moneys paid into any court of the United States, or received by the officers thereof, in any cause pending or adjudicated in such court, shall be forthwith deposited with the Treasurer, an assistant treasurer, or a designated depositary of the United States, in the name and to the credit of such court;" and § 996 provided that "no money deposited as aforesaid shall be withdrawn except by order of the judge or judges of said courts respectively, in term or in vacation, to be

signed by such judge or judges, and to be entered and certified of record by the clerk; and every such order shall state the cause in or on account of which it is drawn." The deposits being, as required, in the name and to the credit of the court, the bank was authorized and required to honor all checks drawn by the court, and to pay them generally out of such deposits; and the order or check for withdrawing the money, in stating the cause in or on account of which it was drawn, was a memorandum imposing no duty upon the bank, but only operating for the convenience of the court and its officers, in keeping its accounts. The obvious purpose of the memoranda of numbers in the deposit book of the court and upon the checks, was to enable the court and the clerk to properly keep the accounts, and that the checks might operate as vouchers, showing the manner in which the moneys in any particular case were distributed, and to enable the clerk to show to the court that he had deposited the funds which he had received. There is no evidence anywhere of any intention that the bank should be controlled by the numbers in paying any check drawn upon it.

Nor do we perceive that there is anything in Rule 28 in bankruptcy which governs this subject. The requirement in that rule, that " every assignee and the clerk of said court shall deposit all sums received by them severally, on account of any bankrupt's estate, in one designated depository," seems to us to be abundantly satisfied by interpreting it as meaning that the assignee and the clerk shall deposit all sums received by them severally, that is, respectively, on account of any bankrupt's estate, in one designated depository. The requirement of Rule 28, that the check or warrant for drawing money from the depository shall state the account for which it is drawn, that is, the name of the estate, contains no indication that the bank is expected to keep a separate account with each estate; because, if it had been the intention that a separate account should be opened with each estate, it would naturally have been required that each check should direct the bank to charge the amount to such particular estate. Such was not the requirement of the rule, and such was not the form of the

check used. The rule was fully complied with in the present case. It did not require that the deposits should be made to the credit of each particular estate, but merely that the moneys should be deposited by the clerk. If it had been intended that the bank should keep a separate account with each bankrupt case, the requirement of the rule that each check should specify the account for which it was drawn, would have been superfluous, because no check otherwise drawn could or would have been paid.

It appears thus to have been plainly the sole purpose of the rule that each check, when drawn and paid, should remain in the hands of the clerk, when returned to him by the bank, as evidence not only of the payment by the bank of the amount, but also that the court had paid the amount to the particular creditor in the particular case. Thus the check would become a voucher, not only as between the court and the bank, of the payment by the latter of so much money which had been on deposit in it to the credit of the court, but a voucher as between the court and the creditor, who had received the money on account of what was due to him in a particular bankrupt case.

No bank is bound to take notice of memoranda and figures upon the margin of a check, which a depositor places there merely for his own convenience, to preserve information for his own benefit; and in such case, the memoranda and figures are not a notice to the bank that the particular check is to be paid only from a particular fund. So, too, a mark on a deposit ticket, if intended to require a particular deposit to be kept separate from all other deposits placed to the credit of the same depositor, must be in the shape of a plain direction, if such a duty is to be imposed on the bank. No facts are found in the present case which give to the figures which accompanied the deposits such a meaning as could require the bank to open a separate account with each bankrupt estate, especially in view of the fact found in the 2d finding, that, after having had at one time the name of the case in which the deposit was made entered by the bank on its book, and on the deposit book of the clerk, in the credit, the clerk directed

afterwards that the name should be dropped in deposits, and that they should be entered simply in the name of the court, but retaining the number of the case. It must be assumed that this change in the manner of keeping the account had some object in view, and that object clearly must have been to avoid the keeping of separate accounts; and, if the keeping of separate accounts was in fact to continue to be required, in view of the use of the numbers in connection with the deposit tickets, an equal amount of labor, if not a greater amount, would have been caused to the bank by the change, as was required of it before, without any possible object being accomplished by the change.

> *The questions certified are all of them answered in the negative, the judgment of the Circuit Court is reversed, and the case is remanded to that court, with a direction to enter a judgment in favor of the defendant.*