The UNITED STATES of America, for the Use and Benefit of WESTINGHOUSE ELECTRIC CORP., and Westinghouse Electric Corporation, Plaintiffs-Appellees,

v.

SOMMER CORPORATION, Defendant,

and

Heyl and Patterson International, Inc., and Travelers Indemnity Company, Defendants-Third-Party Plaintiffs-Appellants,

First National City Bank, Third-Party Defendant-Appellee.

No. 76–4018.

United States Court of Appeals, Fifth Circuit.

Sept. 18, 1978.

---

* District Judge for the Southern District of Florida, sitting by designation.

Strassburger & McKenna, Daniel M. Curtin, Pittsburgh, Pa., for appellants.

Gene W. Lafitte, S. Gene Fendler, Earl S. Eichin, Jr., New Orleans, La., Stephen F. Ellman, Shearman & Sterling, New York City, N.Y., for 1st Nat'l City Bank.

Before RONEY, TJOFLAT and HILL, Circuit Judges.

RONEY, Circuit Judge:

In this Miller Act suit, 40 U.S.C.A. § 270b, we affirm the district court's grant of summary judgment for a materialman against the general contractor, because the evidence is uncontradicted that the materialman was never paid for certain equipment supplied to a subcontractor for use on the Government project. We also affirm the district court's dismissal of the general contractor's third-party suit against a bank which received a check allegedly intended for use in paying the materialman, holding that the bank was justified in complying with the instructions given to it to apply the check proceeds to other accounts.

The facts of this case, as revealed by the pleadings and supporting affidavits, are undisputed. The only question is the legal significance of those facts. Defendant Heyl and Patterson International, Inc. ["Heyl"] entered into a contract with the Panama Canal Company to build a water pump station. Heyl subcontracted the electrical work to defendant Sommer Corporation. Plaintiff Westinghouse Electric Corporation sold certain electrical equipment to Sommer, including two electric transformers costing $10,661.50 each. Sommer, the subcontractor, never paid Westinghouse for the two transformers. Heyl, the general contractor, never directly paid Westinghouse either, but it claims that it indirectly paid Westinghouse through third-party defendant First National City Bank ["Citibank" or "bank"], when it issued its check for the transformers payable to the bank "o/a Sommer Corp." The handling of this check is the crux of the suit.

Heyl issued the check in response to a telephone call from the bank to Sommer, informing Sommer that the bank had received two sight drafts from Westinghouse, drawn on Sommer, for the two transformers. Since Heyl had agreed to advance funds to Sommer for materials purchased for Heyl's project, Heyl issued its check for $21,468.24, the cost of the two transformers plus bank charges. The check was drawn on Citibank and was payable to the order of "FIRST NATIONAL CITY BANK—o/a Sommer Corp." At the bottom of the check was the following notation:

```
   o/c Sommer Corp.
     Contract 1428               S/D 950-39      10,661.50
  2 Transformers-Westinghouse    Bank Charges       145.24
  S/D # 950-38      $10,661.50
```

Heyl later learned that sight drafts 950–38 and 950–39, designated by Heyl on the check, were not for the Westinghouse transformers and did not total $21,323.00, the cost of the two transformers at $10,661.50 each. One was not even drawn by Westinghouse.

Heyl gave the check to a Sommer employee, who delivered it to the bank. The Sommer employee instructed the bank to apply the proceeds from Heyl's check and from various Sommer checks (all totaling approximately $32,000) to seven outstanding sight drafts in the bank's possession and drawn on Sommer, none of which covered the two transformers. As it had on previous similar occasions, the bank applied the proceeds to the sight drafts designated by the Sommer employee. Among the seven designated sight drafts were three, totaling approximately $24,000, drawn by Westinghouse on Sommer for other equipment.

The situation set the stage for this lawsuit. Westinghouse sued Sommer and Heyl, and general contractor Heyl cross-claimed against subcontractor Sommer and filed a third-party complaint against the bank. The district court granted Westinghouse's motion for summary judgment against Sommer and Heyl, and dismissed Heyl's third-party complaint against Citibank. Heyl then voluntarily dismissed its cross-claim against Sommer. Sommer has not appealed the court's summary judgment against it. Heyl has appealed both the summary judgment against it for Westinghouse, and the dismissal of its third-party complaint against Citibank.

■ Initially, Westinghouse and Citibank contend that Heyl is precluded from appealing because it consented to the entry of the orders. This contention is based on a statement by Heyl's attorney, after judgment, at a hearing to set the amount of the appeal bond. We cannot be certain from the collo-

quy at that hearing that Heyl's attorney had previously consented to entry of judgment against his client, rather than simply acquiescing in the trial court's decision after being unable to find any cases to make the judge change his mind. The court's orders themselves do not state they were entered by consent. Appellees could have, but did not, ask the district judge to modify his order to show consent. In these circumstances, the equivocal statements made at the post-judgment bond hearing do not preclude a determination of the merits of Heyl's appeal.

### Westinghouse v. Heyl

■ While Westinghouse had no contractual relationship with Heyl, as the general contractor, Heyl is liable for the cost of any material purchased and not paid for by its subcontractors for use on the project. 40 U.S.C.A. § 270b(a). Westinghouse submitted an affidavit averring that it was never paid for the two transformers. Sommer's answer to Westinghouse's complaint admitted that it had never paid Westinghouse for the transformers. Heyl never claimed that it *directly* paid Westinghouse. Thus, the question is whether the delivery of Heyl's check to Citibank satisfied its obligation to pay Westinghouse for the transformers.

■ Heyl first argues that since Westinghouse received more than $21,323.00 from Citibank, it has been paid for the transformers and now seeks double payment. Heyl's contention, however, ignores the fact that the approximately $24,000 Westinghouse received from Citibank was designated as payment on three other sight drafts drawn by Westinghouse on Sommer. Sommer clearly owed Westinghouse on those drafts. Without more, nothing compels a conclusion that the money received

from Citibank must be considered payment for the transformers. There will be no double receipt by Westinghouse if now paid the price of the two transformers.

Heyl then makes a two-pronged argument: *first*, it paid Westinghouse by paying its agent, Citibank, and the fact the bank as a Westinghouse agent used the funds to pay other Westinghouse accounts is solely a matter between principal (Westinghouse) and agent (Citibank); and *second*, even if the check is construed as a payment to subcontractor Sommer, the bank, as agent for the materialman with knowledge that the funds came from the general contractor, must apply the proceeds to material purchased by the subcontractor for the general contractor's project. *See, e. g., Graybar Electric Co. v. John A. Volpe Construction Co.*, 387 F.2d 55, 58–59 (5th Cir. 1967).

■ There being no evidence that Westinghouse in fact knew Heyl to be the source of the funds, Heyl's argument depends upon imputing as a matter of law the knowledge of Citibank to Westinghouse, as agent to principal. Citibank not being Westinghouse's agent in fact, Heyl contends the agency status is legally supplied by § 4–201(1) of the Uniform Commercial Code, which provides that:

§ 4–201. *Presumption and Duration of Agency Status of Collecting Banks* . . .

(1) Unless a contrary intent clearly appears and prior to the time that a settlement given by a *collecting bank* for an item is or becomes final . . . the bank *is an agent or sub-agent of the owner of the item* . . . . (emphasis added).

A collecting bank is "any bank handling the item for collection except the payor bank." U.C.C. § 4–105(d). Citibank was handling the Westinghouse sight draft on Sommer for collection. It is not the payor bank, defined by § 4–105(b) as "a bank by which an item is payable as drawn or accepted," since the sight draft was drawn not on Citibank but on Sommer itself. *See Marcoux v. Mid-States Livestock, Inc.*, 429 F.Supp. 155, 159 (N.D.Iowa 1977); *Wilhelm*

*Foods, Inc. v. National Bank of North America*, 382 F.Supp. 605 (S.D.N.Y.1974) (both treating banks in Citibank's position as collecting banks). Westinghouse cites *Farmers Cooperative Livestock Market, Inc. v. Second National Bank*, 427 S.W.2d 247, 249–250 (Ky.1968), to argue that Citibank is a payor bank. In that case, however, the court held that the sight draft was actually drawn on the bank. In the present case, the sight draft was not drawn on Citibank but on Sommer. *Compare Farmers Cooperative with Wilhelm Foods, supra*, and cases cited in n.11 therein. Heyl correctly argues that Citibank was a collecting bank and hence an "agent" of Westinghouse's under § 4–201.

■ The flaw in Heyl's argument, however, is that an agent under § 4–201 is not a general agent, the agency status being limited to collecting items. The Official Code Comments show that § 4–201 was placed in the Code to govern the risk of loss of an item while being collected. U.C.C. § 4–201, Comment 1. When read in context, the agency status of § 4–201 is limited to that of an "agent for collection." *See generally* 3 R. Anderson, Uniform Commercial Code § 4–201:1–9 (2d ed. 1971). A collecting agent's duties and authority are set out in the subsequent Code section: a collecting bank is to present the item or send it for presentment, notify its transferor of nonpayment or dishonor, and settle for the item when it receives final settlement. U.C.C. § 4–202. A collecting bank is not the sort of agent whose knowledge of collateral facts is imputed to the owner of the collection item. To imply this type of agency as a matter of law would be inconsistent with the Code, which is designed to allow simple and expeditious transfers of items for collection. *See, e. g.,* §§ 4–203, 4–205(2), 4–206, and Comments thereto.

■ Heyl's argument that it indirectly paid Westinghouse through its agent must be rejected. Westinghouse was not paid for the transformers. The district court's summary judgment against Heyl must be affirmed.

*Heyl v. Citibank*

Heyl contends that if it is liable to Westinghouse, then Citibank is liable to it. Heyl's check was payable to the order of "FIRST NATIONAL CITY BANK—o/a Sommer Corp.," and contained on its face a reference to two Westinghouse transformers. Heyl contends that the check could have properly been used only for payment of the transformers.

There is a question whether the bank or Sommer was payee of the check. In either event, however, Heyl's argument fails.

If Sommer is the payee, Citibank applied the funds as instructed by Sommer. Citibank would not be bound by the notations on the check. The general rule is that a bank upon which a check is drawn is not bound by notations or memoranda upon the margin of a check, such notations being considered as merely for the convenience of the drawer. *State National Bank v. Dodge,* 124 U.S. 333, 344, 346, 8 S.Ct. 521, 31 L.Ed. 458 (1888); *Childs v. Empire Trust Co.,* 54 F.2d 981, 983 (2d Cir.), *cert. denied,* 286 U.S. 554, 52 S.Ct. 579, 76 L.Ed. 1289 (1932); *Frost National Bank v. Nicholas & Barrera,* 534 S.W.2d 927, 933–935 (Tex.Ct.App.1976); 10 Am.Jur.2d *Banks* § 556 (1963).

If, on the other hand, Citibank is the payee, it would be authorized to pay the proceeds only as specifically instructed by the drawer. *Federal Savings & Loan Ins. Corp. v. First National Bank,* 164 F.2d 929, 934 (8th Cir. 1947); *Mesquite State Bank v. Professional Investment Corp.,* 488 S.W.2d 73, 76 (Tex.1973); 10 Am.Jur.2d *Banks* § 560 (1963). In this case, however, the notations as to the sight drafts were confusing and could not have been complied with as written. Although the notations referred to two Westinghouse transformers for $10,661.50 each, it noted two sight drafts which were not for the transformers and not in the amounts specified in the notation. One sight draft noted was not even drawn by Westinghouse. Under these circumstances, the check having been drawn to the bank "o/a Sommer Corp." and delivered by a Sommer employee, the bank was justified in following that employee's instructions on the use of the proceeds from the check.

The district court was correct in dismissing with prejudice Heyl's third-party complaint against Citibank.

Affirmed.