**Marvin K. WOODS, Plaintiff-Appellee,**

v.

**The BANK OF NEW YORK, and the 44 Wall Street Fund, Inc., Defendants-Appellants.**

**No. 86–7352.**

United States Court of Appeals, Second Circuit.

Argued Aug. 27, 1986.

Decided Nov. 26, 1986.

Michael P. Amodio, White Plains, N.Y. (Richard C. Thompson, White Plains, N.Y., of counsel), for defendants-appellants.

Marvin K. Woods, pro se, plaintiff-appellee.

Before FEINBERG, Chief Judge, CARDAMONE, Circuit Judge, and KELLEHER, District Judge.*

CARDAMONE, Circuit Judge:

Involved in this appeal is a narrow but important issue affecting investment law: does a bank servicing shareholders as a transfer agent for a mutual fund have a duty to read and act upon directions written on the memorandum portion of a check? Opinions authored by Judges Holmes, Cardozo, and Hand—whose views we will consider in a moment—have answered in the negative a similar question where a bank acts in its ordinary commercial capacity. But the trial court reasoned that the rationale of those cases did not apply in this case. We disagree with the district court, and believe instead that to require a bank acting as transfer agent to look for notations on checks—beyond those essential to its own requirements—severely restricts the bank's everyday business by clogging the fast flow of information it must process. In this computer age the affairs of a transfer agent bank must be conducted just as rapidly as its regular commercial activities. Further, notations placed on the margin of a check are most often put there for the drawer's convenience.

The Bank of New York and the 44 Wall Street Fund, Inc. appeal from a judgment of the United States District Court for the Southern District of New York (Stanton, J.) in favor of plaintiff, Marvin K. Woods, entered December 17, 1985 following a jury trial. The defendant Bank of New York (Bank) acting on its own behalf and as transfer agent for the defendant 44 Wall Street Fund, Inc. (Fund) asserts several grounds on appeal. Principally, it claims that it cannot be liable to plaintiff, for conversion or negligence as a matter of law, and that, even if it can be found liable,

---

* Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation.

the jury improperly calculated plaintiff's damages. For the reasons explained below, we reverse and remand for further proceedings.

## FACTS

The parties have agreed to the following facts. Marvin K. Woods was a shareholder of the Fund, a mutual stock fund. The Bank was the shareholder servicing and transfer agent for the Fund, handling investments in and out of the Fund. Woods also had an investment in a money market fund called the Reserve Fund (Reserve) for which the Bank of New York did not act as transfer agent.

Under the Fund's 44/Reserve Switch Plan, a participating investor could telephone or write The Bank of New York and direct it to liquidate his investment in the 44 Wall Street Fund and "switch" it directly to the Reserve Fund. In order to participate in this switch plan, an investor had to claim that right in his original account application. If an investor did not elect to participate originally, the Fund's prospectus permits him to do so at a later date either by sending a new signature guaranteed application or a signature guaranteed letter of instruction to the Bank requesting such participation.

Believing that he had already elected switch plan privileges, Woods telephoned the Bank on June 22, 1983 and directed it to switch 1,000 shares of his Fund to Reserve shares. Woods was advised over the telephone that the Bank had no record of his choosing this option. After some discussion, Woods authorized the Bank to redeem his Fund shares and send him a switch-plan application. Pursuant to this conversation, the Bank liquidated Woods' Fund shares and mailed him a check for $22,054.72 together with the requested application.

On July 1, 1983 the Bank of New York received from Woods an executed application for the Switch Plan and a check in the amount of $21,000, payable to the Bank, and bearing on its lower left hand corner, on the memorandum portion, the following

notation: "For Acct. 155–69–985–P RESERVE FUND." Woods also testified that he sent a hand-written note with the check and application indicating that the check was to be applied to the Reserve, though he did not retain a copy of it and the Bank denies receiving it. The parties agree that Woods' check and application were not signature guaranteed, and Woods concedes that his enclosed note was not signature guaranteed. Accordingly, the Bank returned Woods' application to him to obtain a signature guarantee, which Woods secured and returned on August 4, 1983.

But Woods' check was not returned. Instead, the Bank applied the $21,000 to the repurchase of Fund shares in his name. Upon receiving written confirmation of this transaction, Woods contacted The Bank of New York and demanded that it rescind the repurchase of the Fund shares and return his $21,000. He also contacted the Fund directly. Both the Fund and The Bank refused to refund his money and appellee chose not to exercise his switch privilege during the ensuing months. On March 13, 1985, pursuant to a stipulation and order, the Bank liquidated Woods' Fund shares, which as of that date amounted only to $7,260.05.

Woods then sued the Bank and the Fund in negligence and conversion for failure to handle properly his $21,000 check made payable to The Bank. The complaint sought damages of $21,000, interest that amount would have earned in the Reserve, punitive damages, attorney fees, and costs. After a two-day trial a jury rendered a verdict against appellants in the amount of $12,500. Their subsequent motion to reduce the verdict or to grant a new trial on the ground that the jury misapplied the court's instruction on mitigation of damages was denied by the district court in an order dated April 4, 1986. Appellants appeal from the judgment.

## DISCUSSION

### A.

■ Appellants first argue that as a matter of law they cannot be liable in con-

version or negligence for repurchasing Fund shares despite the notation on Woods' check "For Acct. 155–69–985–P RESERVE FUND" because they had no duty to read and act upon the memorandum portion of a check. In support of this proposition they rely primarily on *National State Bank of Springfield v. Dodge*, 124 U.S. 333, 8 S.Ct. 521, 31 L.Ed. 458 (1888), and *Childs v. Empire Trust Co.*, 54 F.2d 981 (2d Cir.), *cert. denied*, 286 U.S. 554, 52 S.Ct. 579, 76 L.Ed. 1289 (1932).

In *Dodge*, a national bank acted as a depository for a district court of the United States. Each entry of a deposit in the books of the bank had a number—understood by the bank—to indicate a particular bankruptcy case. The action arose when the bank dishonored a check that the district court attempted to draw in order to pay a dividend in a bankrupt estate. Further investigation revealed that some of the money earmarked with the number associated with that particular case had been paid out by the bank on checks bearing other numbers, and had this not occurred there would have been enough money to pay the dividend. The district court sued the bank to recover the amount of the dividend.

Rejecting the district court's argument that the bank had a duty to separate deposits and withdrawals according to the case number noted on the checks, the Supreme Court stated:

> [W]e are of opinion that the Bank had a right to assume that these memoranda of numbers in the deposits and in the checks were merely for the convenience of the court and its officers ....

*Id.* 124 U.S. at 344, 8 S.Ct. at 527. The Court reasoned that the memoranda on the check served solely as a voucher for the depositor's convenience. *Id.* at 345, 8 S.Ct. at 527. It concluded:

> No bank is bound to take notice of memoranda and figures upon the margin of a check, which a depositor places there merely for his own convenience, to preserve information for his own benefit; and in such case, the memoranda and figures are not a notice to the Bank that the particular check is to be paid only from a particular fund.

*Id.* at 346, 8 S.Ct. at 528.

Thereafter in *Childs*, this Court, in an opinion by Judge Learned Hand, addressed a similar issue in a case involving embezzlement by a bankruptcy trustee. The issue was whether the bank had enough notice to be charged with defalcation by a trustee who had cashed checks bearing the written notations "interest payments due October 1, 1928" and "advances made on lien discharges Sept. 29/28—Payroll 9/23/28." 54 F.2d at 982. In fact, no interest payments were made, no liens existed, and no payroll was due on the date mentioned. In holding that the bank was not liable, our Court stated:

> Nor do we think that the notations were notice of an abuse of [the trustee's] power. ... [W]e do not charge the bank with them at all. They were not conditions fixed upon the very order to pay ... they were put upon the cheques apparently for the convenience of the receiver in his accounts and to identify the disbursements as between him and the creditors. We do not charge a bank teller with the duty of observing them and making any inferences
>
> ....

*Id.* at 983 (citations omitted). The Court explained the rationale for this holding as follows:

> A bank's business must be done with dispatch; innumerable items pass before a teller in the course of a month. He is indeed charged with knowledge of his depositors' signatures and with the genuineness of the indorsements; but to demand of him a scrutiny of any notations upon them, and such conclusions as deliberation might require, would impose undue restrictions upon the fluidity of such business.

*Id.* *See also Empire Trust Co. v. Cahan*, 274 U.S. 473, 480, 47 S.Ct. 661, 662, 71 L.Ed. 1158 (1927) (Holmes, J.) (" 'The transactions of banking in a great financial center are not to be clogged, [and] their pace

slackened, by over-burdensome restrictions.'") (quoting *Whiting v. Hudson Trust Co.*, 234 N.Y. 394, 406, 138 N.E. 33 (1923) (Cardozo, J.)). Thus, both *Dodge* and *Childs* make it quite clear that a bank owes no duty to its clients to scrutinize directions placed on the memorandum portion of an incoming check. *See also United States v. Sommer Corp.*, 580 F.2d 179, 184 (5th Cir.1978); *American Surety Co. v. First National Bank*, 141 F.2d 411, 413 (4th Cir.), *cert. denied,* 322 U.S. 754, 64 S.Ct. 1267, 88 L.Ed. 1583 (1944).

*Childs* further supports the conclusion that to impose such an obligation on appellant Bank in this case would be commercially unreasonable in light of the volume of checks passing through its hands daily and the need for speed. The Bank of New York's mutual fund operation makes approximately 45,000 payments per week. Each clerk handles about one payment every three minutes. Moreover, according to Forbes Annual Mutual Fund Survey, there are about 1200 equity and bond funds as of June 30, 1986; including money market funds, there are hundreds more. Investors' net investment in equity and bond funds for the first six months of 1986 amounted to $75 billion, triple the amount for 1984 and nearly equal—in those six months—to the total for all of 1985. Saunders, *The 1986 Annual Mutual Funds Survey,* FORBES 100 (Sept. 8, 1986). Thus, this huge volume of business obviously requires speedy processing by transfer agent banks competing for a share of it. Under these circumstances, it makes little sense to attempt to distinguish the reasoning of such great jurists as Holmes, Cardozo and Learned Hand merely because the Bank here wore the hat of a "transfer agent" rather than that of a "commercial agent".

Yet, despite the Supreme Court's mandate in *Dodge* and the sound policy we adopted in *Childs*, the district court denied appellant's motion to instruct the jury on the holding of *Dodge*. The trial court reasoned that *Dodge* and its progeny "should not govern here, where there is a good body of testimony from which the jury could conclude that the bank in this case paid considerable attention to such notations or memoranda on the checks and in doing so relied upon them to determine the account to which the check should be placed by the bank ...."

■ We agree with the district court's conclusion that though the Bank had no legal duty to inspect notations on incoming checks, the jury could properly have found that it had in fact assumed that obligation by its own procedures. Alternatively, the jury could have credited Woods' testimony that he enclosed a note of instruction with his check and application. *See Dodge,* 124 U.S. at 346, 8 S.Ct. at 527 (suggesting that *clear* and *plain* instructions, such as a mark on a deposit ticket accompanying a check, might obligate a bank to follow its depositor's directions.) But by refusing to instruct the jury that the Bank had no *legal* duty to examine the memorandum portion of the check—leaving aside whatever duties it may have in fact assumed—the trial court gave the jury the option of reaching a verdict on grounds prohibited by *Dodge.* Accordingly, though we agree that the jury in reaching its verdict could properly consider both the Bank's procedures and Woods' purported letter of instruction, the district court erred in refusing to instruct the jury on the sound law set forth in *Dodge.*

### B.

■ Appellants argue further that both its own procedure and Woods' letter of instruction are nondispositive. The Bank points out that even if it assumed an obligation to inspect the check or to follow the enclosed instructions, it was nonetheless powerless to purchase Reserve shares absent the guarantee of Woods' signature. Without a signature guarantee that would authorize it to act on Woods' behalf, the Bank's argument continues, it cannot be found liable either for negligence or conversion as a matter of law.

This argument is not without merit. Concededly, under the Fund's prospectus,

any instructions to be legally binding on the Bank must be signature guaranteed. It is equally undisputed that whatever instructions Woods gave the Bank with his $21,000 check did not include his guaranteed signature. Consequently, appellants correctly maintain that the Bank could not have transferred Woods' funds into the Reserve when it received his check, but had to wait until it received his guaranteed signature.

Nonetheless, this argument misses one essential point. While the Bank was unable to purchase Reserve shares without Woods' guaranteed signature, it failed to explain satisfactorily why it applied that check to the repurchase of Fund shares rather than simply returning it to Woods along with the switch plan application, which it did send back for a signature guarantee. Since the jury was entitled to find appellants liable in negligence or conversion on these grounds, the case must be remanded. In fact, it may be that upon further consideration of the matter in the district court other issues will emerge.[1]

██ Appellants' final argument that there was no factual basis justifying the amount of damages awarded by the jury is without merit as it was based solely on counsel's interview with a single juror. Counsel alleges that the jury "did not apply the Court's charge on mitigation of damages and instead applied the doctrine of comparative negligence." The district judge correctly ruled that "[s]uch evidence based on a juror's account of the jury's reasons for its verdict, even if it were not hearsay, is incompetent and cannot be received." (relying on Fed.R.Evid. 606(b)).

## CONCLUSION

Accordingly, the judgment is reversed and the case remanded for further proceedings consistent with this opinion.

1. For example, plaintiff's conversion charge might be proved if the Bank did not have authorization under the terms of its own prospectus to deposit plaintiff's check in the 44 Wall Street Fund. Specifically, the prospectus appears to require that, to add to one's account by mail, one must send not only a check made out to the

Bank of New York, but also the "detachable stub from the Transaction Advice." The record before us is silent as to whether the plaintiff mailed or the Bank received the detachable stub. But such issues, which were not raised before us, are best thrashed out in the trial court.