**UNITED STATES of America**

v.

**Edward SINGER**

**No. 3:04 CR 210(SRU).**

United States District Court, D. Connecticut.

Nov. 23, 2004.

Henry K. Kopel, Kevin J. O'Connor, Peter S. Jongbloed, U.S. Attorney's Office, New Haven, CT, for Plaintiff.

Robert M. Berke, Bridgeport, CT, for Defendant.

### RULING ON MOTION FOR NEW TRIAL

UNDERHILL, District Judge.

Edward Singer and James Pearson were tried on charges of illegally possessing a firearm and ammunition, in violation of 18 U.S.C. § 922(g). The jury returned verdicts of "not guilty" for Pearson and "guilty" for Singer. When polled, all the jurors confirmed the verdicts. One juror, however, made a statement, which Singer contends requires a new trial. His motion for a new trial requires me to address two issues: (1) whether I violated Rule 31(d) of the Federal Rules of Criminal Procedure by accepting the jury's verdict as unanimous, and, (2) even if the verdict was unanimous, whether the juror's statement indicates there was a substantive problem with the jury's deliberative process. I conclude that the jury verdict in this case was unanimous and that there exists no substantive basis for overturning that verdict.

### I. Facts

Defendants Singer and Pearson were tried together on the "felon-in-possession" charges. The charged conduct revolved principally around an alleged altercation between Singer and one Michael Miller. The government's evidence, presented on October 25 and 26, 2004, consisted primarily of the testimony of Miller; Tamara Pihl, who was with Miller on the night in question; Carrie Soules, who was with Singer and another man on the night in question; and the police officers who ultimately arrested the defendants.

Soules testified that on the evening in question she invited Singer and another man into her apartment. While in her apartment, the unidentified second man, who the government contends was Pearson, displayed a firearm and ammunition and fired a shot. The three of them then left Soules's apartment.

At some point, Singer went behind Miller's house, which was near Soules's apartment, to urinate. Just as Singer finished urinating, Miller pulled up in a van along with Pihl. Miller and Singer exchanged a few hostile words. Singer walked to where the unidentified man was standing and engaged in a brief tussle with him. Miller, meanwhile, parked his van in his driveway, left it, and approached Singer. Singer, who was then standing in the street, displayed a firearm. Miller backed off, and Singer fired a shot into the air.

Miller and Pihl corroborated Soules's testimony about the confrontation, but when testifying neither of them identified Singer or the other man. They also both testified that they called 911 after the incident.

Soules testified that after the altercation she returned to her apartment and was joined shortly by Singer and the unidentified man. Soon thereafter, the police arrived at Soules's apartment and arrested Singer and the unidentified man.

The arresting officers testified that, with Soules's permission, they searched her apartment and found a gun, ammunition, and a bullet hole in the wall. They also testified that, out on the street, Miller identified the two men just arrested as the

men he had seen outside his house.[1] At the police station, a live bullet was found in the pocket of Singer's jacket.

Fingerprints identified Pearson as the second man arrested, although none of the arresting officers could identify him in court.

On October 27, the jury was charged and, shortly after noon, retired to deliberate. Approximately three hours later, the jury sent a note indicating they had reached a verdict. In the presence of the jury and all parties, I read aloud the completed verdict form, which indicated that the jury unanimously found Singer guilty and Pearson not guilty. Then, in accordance with my uniform practice and as permitted by Rule 31(d), I polled the jury by having my courtroom deputy ask each juror individually "is this your verdict?" The first nine jurors (jurors 2 through 7 and 9 through 11)[2] responded "yes." The tenth juror, juror 12, responded as follows:

Juror: Well, I had a comment. Could I, I mean—it was at first—[to another juror] would you please.

Could I make my statement?

The Court: Yes.

Juror: Well, at first it was not my verdict. And I guess it's the defense did not prove—I asked the question, and I said was it his jacket? And the defense did not prove that it was or wasn't his jacket, so if the jacket that they found the bullet in—

The Court: Okay, let me inquire, whatever your deliberations may have been, the question that you're being asked now is whether the verdict as I just read it is your verdict; meaning

that you agree with the verdict guilty for Edward Singer and not guilty for James Pearson. So, however you may have felt at one point in deliberations, the question really now is whether this is in fact the verdict that you voted for?

Juror: Yes.

(Oct. 27, 2004 Trial Transcript at 7.) The remaining two jurors were then polled. Both also responded that the verdict read was their verdict. I then ordered the verdict recorded and discharged the jury.

At the conclusion of the poll, Singer's counsel moved for a mistrial. Singer now renews that motion, seeking a new trial pursuant to Rule 33.

## II. Discussion

Singer argues that I committed a procedural error, namely, failing to comply with Rule 31(d) of the Federal Rules of Criminal Procedure. Because Singer's brief suggests that he believes juror 12's comments may indicate that the jury reached its verdict through a misunderstanding of law, I also address the possibility that juror 12's statement reveals a substantive problem with the jury's deliberations.

### A. *Rule 31(d)*

Regarding a possible violation of Rule 31(d), Singer argues as follows. Juror 12's response to the poll indicated either a disagreement with the verdict or a coerced agreement, which rendered the verdict nonunanimous. In light of this lack of unanimity, Rule 31(d) required me to either (a) declare a mistrial or (b) instruct the jury to deliberate further. By not

---

**1.** At trial Miller acknowledged this earlier identification, but testified—apparently to the government's surprise—that he actually had not recognized the two men but only said he did because he was angry and upset.

**2.** With the consent of the parties, the case was tried to fourteen jurors, and the two alternate jurors, jurors 1 and 8, were selected at random prior to deliberations.

doing so, but instead continuing to poll, I coerced the jury into returning a verdict.

I disagree with the premise of Singer's argument, namely, that juror 12 disagreed with the verdict or agreed under duress. My interaction with juror 12, though not typical, was not coercive, and it revealed her unambiguous agreement with the verdict.

### 1. *Juror Statements During a Poll*

Because a case like this, where a juror makes a statement during a poll, is peculiar, I will explain in some detail the considerations that guided my interaction with juror 12.

Jury polls are governed by Rule 31(d) of the Federal Rules of Criminal Procedure.

**Jury Poll.** After a verdict is returned but before the jury is discharged, the court must on a party's request, or may on its own, poll the jurors individually. If the poll reveals a lack of unanimity, the court may direct the jury to deliberate further or may declare a mistrial and discharge the jury.

Except for the mandate that jurors be polled individually, the method of polling the jury is left to the judge's discretion, so long as the polling process does not coerce any juror. *United States v. Gambino*, 951 F.2d 498, 501 (2d Cir.1991).

Typically, conducting a jury poll is not a task that requires the exercise of much judicial discretion. Most judges will, as I do, have the courtroom deputy ask each juror individually whether the verdict announced is that juror's verdict, to which the juror will respond either "yes" or "no." The situation quickly becomes more difficult when the judge is confronted, as I was, with a juror who wishes to respond with a more detailed answer.

The purpose of a jury poll is to test the uncoerced unanimity of the verdict by re-quiring each juror to personally affirm the verdict returned by the foreperson, thus creating individual responsibility and eliminating uncertainty. *Gambino*, 951 F.2d at 502. It is this need to determine "uncoerced unanimity" that guides a judge's discretion when faced with a juror reluctant to simply affirm or repudiate the announced verdict. On the one hand, a judge must ascertain whether the juror's response indicates that the juror does not agree with the verdict. On the other hand, the judge must take care that nothing he says to or asks of the juror influences the juror's answer one way or the other.

There is an additional concern that cannot help but creep into the mind of a judge attempting to determine the uncoerced unanimity of a verdict when faced with a juror who wishes to give an extended answer to the polling question, namely, the great reluctance with which our system of fact-finding ever allows the secrecy of jury deliberations to be disturbed. *See McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); *United States v. Dioguardi*, 492 F.2d 70, 79 (2d Cir.1974); *United States v. Crosby*, 294 F.2d 928, 950 (2d Cir.1961). This principle, intended among other things to encourage free and open discussion among jurors and to maintain the integrity of the jury institution, is codified in Rule 606(b) of the Federal Rules of Evidence, which states that in general,

[u]pon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict or indictment or concerning the juror's men-

tal processes in connection therewith . . . .

■ I do not think that Rule 606(b) limits what a judge may consider in polling the jury, because I do not think the Federal Rules of Evidence apply to a poll. Rule 31(d) of the Federal Rules of Criminal Procedure creates a procedure by which a judge may, and in some circumstances must, test the unanimity of a jury. The procedure is not an evidentiary hearing; the jurors are not witnesses; the judge is not finding facts. Consequently, the Federal Rules of Evidence are inapplicable.

I acknowledge that this point is not made entirely clear by the rules. Rule 1101(b) of the Federal Rules of Evidence makes those rules applicable to all criminal proceedings, and a Rule 31(d) proceeding is not one of the exceptions listed in Rule 1101(d)(3). I do not, however, think that omission is significant. Rule 1101(d)(3) has never been read as giving an exhaustive list of proceedings exempted from the application of the Federal Rules of Evidence. Rule 1101(b) says only that the rules apply "generally" to the enumerated proceedings, and courts have on several occasions found exceptions not explicitly mentioned by the rules. *See, e.g., Cook v. American Steamship Co.,* 134 F.3d 771 (6th Cir.1998) (rules of evidence do not apply when judge imposes sanctions); *United States v. Frazier,* 26 F.3d 110 (11th Cir.1994) (rules of evidence do not apply at hearing revoking supervised release); *United States v. Zannino,* 1985 WL 2305 (D.Mass. June 5, 1985) (rules of evidence

do not apply at competency hearing). More importantly, I think it is fairly obvious that Congress did not intend the Federal Rules of Evidence to apply to a judge's polling of a jury. If the Federal Rules of Evidence applied to jury polls, then jurors, as witnesses, would be required to take an oath to testify truthfully in accordance with Rule 603. They do not take such an oath, and never have. Presumably Congress was well aware of that fact when it enacted Rule 31(d), because the practice of polling juries existed before the rule. Moreover, if jurors were witnesses when polled, then the entire polling process would likely be forbidden by Rule 606(a), which prohibits jurors from testifying at the trial in which they sit as jurors. In other words, application of the Federal Rules of Evidence to polling would lead to an absurd result.

Accordingly, I think it clear that the Federal Rules of Evidence have no application to a poll conducted under Rule 31(d).[3] The only significant limitation on a judge's discretion in conducting a poll is the rule that he may do nothing coercive. Nevertheless, although a judge is not bound by Rule 606(b) when polling a jury, it is still prudent for a judge to bear in mind the policy embodied in that rule, and, where possible, refrain from probing into the deliberative process of the jury. *See United States v. Musto,* 540 F.Supp. 318, 344 (D.N.J.1982) ("some of the values underlying the rule against impeachment of verdicts are also implicated where a juror,

---

**3.** Because I conclude that the Federal Rules of Evidence do not apply when a judge is following the procedure authorized by Rule 31(d), I do not need to address the question taken up by other courts whether a judge's questions to a jury after the jury reaches a verdict but before the verdict is recorded constitute an "inquiry into the validity of a verdict" covered by Rule 606(b). *See, e.g., Grace*

*Lines,* 439 F.2d at 1028 (rule that juror will not impeach his own verdict does not preclude examination of the reasons motivating a juror's vote prior to the juror's assent to the verdict and it being recorded); *see generally,* 27 Charles A. Wright and Victor James Gold, *Federal Practice and Procedure,* § 6074 at 409–11.

prior to reaching a verdict, seeks to speak with the judge").

These principles offer guidance when a juror does not answer "yes" or "no" to the polling question. A judge could refuse to allow to allow the juror to make any statement, and instead explain to the juror that the only question that matters is whether or not the verdict read is the juror's verdict. That approach runs the risk of being coercive. I can well imagine that a juror who has significant reservations about a verdict, but nevertheless voted for that verdict in the jury room, if told by a judge that she is limited to a "yes" or "no" answer, would simply fall back on her previous response. Thus, prohibiting any statement by a juror could limit the effectiveness and validity of the poll.

On the other hand, a judge need not permit a juror to continue to make a statement after it becomes apparent the she agrees or disagrees with the verdict, or that her statement does not pertain to the question of unanimity. *See, e.g., United States v. Smith*, 562 F.2d 619, 622 (10th Cir.1977) (affirming judgment where "at the juror's first direct indication of her nonconcurrence the court stopped the inquiry"). Allowing a juror to continue to speak is not only unnecessary, it may be inappropriate, if, for example, the juror begins discussing the jury's deliberations.

### 2. *The Poll in this Case*

■ In this case, when juror 12 asked if she could make a statement, I assented. Had I not done so, I am not sure I could have been certain that the jury was truly unanimous. Nothing that the juror went on to say, however, demonstrated any reluctance to confirm the verdict. The very first words of her statement—"Well, at first it was not my verdict"—clearly indicated that *at present* it was her verdict. And, as she continued to talk, it became obvious that she wanted to explain how she arrived at her verdict, not to describe any present discomfort, reluctance, or doubt concerning the verdict. Accordingly, seeing no indication of a lack of unanimity, but becoming concerned that the juror would go further into the irrelevant, and inappropriate, subject of the deliberative process, I interrupted her in order to bring her back to the relevant question— "Was this her verdict?" To that question, which I explained in some detail, she answered unequivocally, and unhesitatingly, "yes."

In short nothing she said and nothing about her demeanor caused me the slightest doubt about her agreement with the announced verdict. Additionally, nothing she said indicated she would have gone on to say anything that would have called into question the certainty of her assent. There being no indication of lack of unanimity, I saw no reason to stop the poll. Upon reflection, I see no error in that decision, and certainly do not believe I said or did anything that coerced juror 12's, or any other juror's, assent to the verdict.

Nor do I believe that juror 12's statement reveals she misunderstood her duty as a juror or erred in her deliberations. I do not rule out the possibility that a juror might say something that, though not indicating any reluctance to affirm the announced verdict, shows that the juror misunderstood his duty so completely that the judge must nullify that juror's vote and treat the verdict as non-unanimous. *See Grace Lines, Inc. v. Motley*, 439 F.2d 1028, 1031 (2d Cir.1971) ("The issue thus presented is whether the motivation of the juror was so unlawful or improper as to require the court to nullify her vote and therefore the entire verdict."). If there is such a case, it is not this one.

Because Singer was the only defendant who was ever described as having a jacket

in which a bullet was found, juror 12 was obviously talking about her verdict with respect to Singer. The only thing juror 12 said that indicated any possible misunderstanding of her duty is her statement that she had been concerned that the defense did not prove ownership of a jacket, i.e., a statement possibly indicating that she misunderstood the burden of proof. My charge to the jury contained detailed instructions on the government's burden of proof and the requirement of proof beyond a reasonable doubt. Juror 12's statements do not lead me to believe that her vote was the result of misunderstanding that burden.

My impression is that the juror misspoke and said "defense" instead of "government." This impression is based on two circumstances. First, it appeared to me that the juror gestured toward the government's table when speaking. Second, she indicated that she was inclined to vote differently than the ultimate verdict of guilty, i.e., not guilty, when she thought ownership of the jacket was not proven. That view suggests that she believed the *government* had failed to prove ownership. If she believed the *defense* had failed to sustain a burden to prove that Singer did not own the jacket, her initial inclination to vote not guilty makes no sense; failure of the defense to meet a burden would have led her to a vote of guilty.

Moreover, even if the juror did misunderstand the burden of proof, there is no indication that her verdict was the product of such a misunderstanding. Her misunderstanding may have been corrected by the other jurors, or she may have ultimately concluded the defendant was guilty because he possessed the gun even if he did not possess the bullet found in a jacket.[4]

It is exactly this sort of speculation, however, that a court should avoid. Here, where a juror gave a ready assent to a verdict, where there was no evidence of coercion or incompetence, and where there is only the slightest evidence tending to show any misapprehension of the court's instructions, I see no basis for discrediting her vote.

In sum, I am satisfied that my polling was appropriate, that juror 12 fully assented to the announced verdict, and that there are no circumstances warranting nullification of her assent. There was, therefore, no violation of Rule 31(d).

### B. *Substantive Error*

Even if a jury reaches a unanimous verdict after a procedurally sound trial, problems with the jury's deliberations may require the judge to order a new trial. *See McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 554, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) ("One touchstone of a fair trial is an impartial trier of fact—a jury capable and willing to decide the case solely on the evidence before it.") (internal citations omitted). A defendant who believes such an impropriety has occurred and moves for a new trial pursuant to Rule 33 must be able to present competent evidence demonstrating the problems that affected the deliberation. *See United States v. Sun Myung Moon,* 718 F.2d 1210, 1234 (2d Cir.1983) ("[A] trial court is required to hold a post-trial jury hearing only when reasonable grounds for investigation exist. Reasonable grounds are present when there is clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a

---

**4.** In this connection it is worth noting that Singer does not challenge the sufficiency of the evidence against him. Neither does he argue that the jury's verdict was against the weight of the evidence.

defendant.") (internal citations omitted). Such evidence must be admissible under the Federal Rules of Evidence.[5]

 To the extent Singer is arguing that juror 12's statement indicates a fundamental flaw in the jury's deliberations, such a claim is effectively barred by Rule 606(b) of the Federal Rules of Evidence. A Rule 33 motion raising questions about the propriety of a jury's deliberations is an "inquiry into the validity of the verdict," and is therefore governed by Rule 606(b). *See Woods v. Bank of New York*, 806 F.2d 368, 373 (2d Cir.1986). Accordingly, juror 12 could not testify in support of Singer's motion about "any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon [her] mind or emotions as influencing [her] to assent or dissent from the verdict ... or concerning [her] mental processes in connection therewith." Fed.R.Evid. 606(b). Similarly, "evidence of any statement by [juror 12] concerning a matter about which the juror would be precluded from testifying cannot be received." *Id.*

Nothing juror 12 said falls within one of the exceptions listed in Rule 606(b)—she did not indicate that any juror had considered extraneous prejudicial information or received an improper outside influence. Additionally, though it is possible that the Constitution requires other exceptions to Rule 606(b), a juror's testimony concerning mistake of law is not one of them. *See Anderson v. Miller*, 346 F.3d 315, 327 (2d Cir.2003) (noting there may be Constitutionally required exceptions to Rule 606(b)); *Dioguardi*, 492 F.2d 70, 79 n. 12 ("possible internal abnormalities in a jury

will not be inquired into except in the gravest and most important cases"); *United States v. D'Angelo*, 598 F.2d 1002 (5th Cir.1979) (verdict could not be impeached by note sent by jury indicating it misunderstood the law).

Because nothing juror 12 said at polling is admissible to demonstrate problems with the jury's deliberations, there is no evidence at all to support a motion for new trial on that ground.[6]

Singer's motion for a new trial (doc. #72) is DENIED.

It is so ordered.

---

**5.** Obviously, the fact that a judge is not bound by the rules of evidence when polling a juror does not exempt statements made during a poll from the rules when such statements are offered in connection with another proceeding, such as a Rule 33 motion.

**6.** It is nevertheless worth noting that, for the reasons set out in the previous section, even could I consider juror 12's statements, they are insufficient to persuade me that there was any flaw in the deliberations, let alone a problem significant enough to require a new trial.